IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOOD SPORTSMAN MARKETING, LLC | § § | |
| *Plaintiff*, | § § | CASE NO. 4:23-cv-2371 |
| vs. | § § § | |
| SHENG CHEN, HAIYING CHENG, AND CHEN ZUBANG | § § § | |
| | § § | JURY DEMANDED |
| *Defendants*. | § | |

**PLAINTIFF GSM'S RESPONSE TO
DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**BACKGROUND** .................................................................................................................. 2
   A.    Factual Background................................................................................................ 2
**LEGAL STANDARD** ......................................................................................................... 3
**ARGUMENT**....................................................................................................................... 4
   A.    Defendants' request for injunctive relief should be denied because is not based on any pleadings. ............................................................................................................... 4
   B.    Defendants have not shown irreparable harm................................................................ 5
   C.    Defendants have not shown a likelihood of success on the merits. ................................ 9
   D.    The balance of harm favors GSM. .................................................................................. 15
   E.    The public interest weighs against an injunction. ........................................................... 15

Defendants' request for injunctive relief is actually Defendants' 12(b)(6) motion disguised as a motion for preliminary injunction and should be denied on this basis alone. GSM has sued Defendants, not vice versa, and Defendants have not asserted any counterclaims against GSM on which they can request injunctive relief from the Court. Moreover, Defendants have sought permission to file a Rule 12 motion to seek dismissal of this case in its entirety, based on three arguments. These exact three arguments form the basis for Defendants' request for injunctive relief. This makes no sense. Defendants cannot seek both seek dismissal of this case, while also asking the Court to enter an injunction in this case in its favor. Moreover, this Court's procedures clearly require a pre-motion conference prior to the filing of a Rule 12 motion, and while Defendants have requested this conference, the Court has not yet held the conference, meaning Defendants do not have permission to file a Rule 12 motion, which is what their preliminary injunction motion really is. Defendants also should not get two bites at the apple by making the same argument in two different motions.

Even assuming Defendants' motion was procedurally proper, injunctive relief should be denied. The Fifth Circuit and courts in this Circuit have repeatedly held that injunctions are an **extraordinary** remedy and that granting injunctions is the exception, rather than the rule. To receive such an extraordinary remedy, the movant must make a **clear** showing that it will suffer irreparable harm—i.e., harm that cannot be remedied by money damages—and that it will succeed on the merits of its case. Defendants' short, conclusory motion and the single party declaration it offers to support it, wholly fail to meet this exacting standard. Indeed, Defendants have not offered any concrete or

corroborating evidence to support their vague allegations of irreparable harm. On this additional basis, Defendants' speculative motion should be summarily denied.

## BACKGROUND

### A. Factual Background

This is an action for copyright infringement of GSM's federally registered copyrights, trade dress infringement, and related state law causes of action. GSM is a leading provider of sporting goods to hunters in North America. Since 2016, GSM has been selling protective earmuffs for hunters and shooters. GSM owns two federal copyright registrations protecting the design of the Walker® Razor® brand of electronic earmuffs, and also owns the trade dress in the earmuffs. Since 2016, GSM has sold 4,500,000 units of the Walker® Razor ®brand electronic earmuffs and consumers have come to associate the distinct design of these earmuffs with GSM. *See* Dkt. 6, pp. 21-22.

Defendants Chen, Cheng, and Zubang have been infringing GSM's intellectual property rights in the earmuffs by selling electronic copycat versions of GSM's electronic earmuffs on Amazon. The infringement is so blatant that GSM was successful in halting the sales of the infringing earmuffs on Amazon.com. Dkt. 6, ¶ 33. The infringing earmuffs are being sold under the brands ACT FIRE, HITAIM, FIREGEAR, and GLORYFIRE.

GSM served all three Defendants with the First Amended Complaint on August 4, 2023. Dkt. 20, ¶¶ 2-4. Pursuant to this Court's procedures, Defendants have requested a pre-motion conference with the Court to seek dismissal of the First Amended Complaint in its entirety, pursuant to Fed. R. Civ. P. 12. Dkt. 19. Defendants' request for pre-motion conference identifies three bases on which it will seek dismissal of GSM's First Amended

2

Complaint: (1) that GSM's copyright claims improperly expand into the realm of patent law, (2) that GSM has not sufficiently identified the elements of its trade dress, and (3) that GSM's state law claims are preempted by the Copyright Act. Dkt. 19, p. 1. As shown below, these three arguments are the exact same arguments that form the basis for Defendants' request for injunctive relief. In other words, Defendants have used their motion for injunctive relief to bypass this Court's procedures on pre-motion conferences.

Finally, Defendants' request for injunctive relief is at odds with its request for dismissal of the case. Defendants cannot simultaneously ask this Court to grant them injunctive relief, while arguing that the case that forms the basis of their request for relief is meritless.

## **LEGAL STANDARD**

The Fifth Circuit has cautioned that granting a preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *see also Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule."). To obtain a preliminary injunction, the movant must make a clear showing of: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any harm to the nonmovant that may result from the injunction; and (4) that the injunction will not undermine the public interest." *MGE*

*UPS Sys. v. Fakouri Elec. Eng'g*, 2004 U.S. Dist. LEXIS 19274, at *3-4 (N.D. Tex. Sept. 28, 2004) (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).

The Fifth Circuit reviews a preliminary injunction for abuse of discretion, reviewing findings of fact for clear error and conclusions of law *de novo*. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).

## ARGUMENT

### A. Defendants' request for injunctive relief should be denied because is not based on any pleadings.

"Although the Fifth Circuit Court of Appeals has not specifically addressed this issue, district courts within this circuit have found that a request for preliminary injunction **must also be based on allegations related to the claims in the complaint**." *Booker v. McDuffie*, No. 5:18-cv-208-BQ, 2019 U.S. Dist. LEXIS 141283, at *3 (N.D. Tex. July 22, 2019) (internal citations omitted) (emphasis added); *see also Omega World Travel Inc. v. Trans. World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (explaining that the purpose of a TRO is to protect the movant from being harmed in the manner in which he argues that he was or will be harmed through the illegality alleged in the complaint). "The relationship between a request for injunction and the underlying claims 'is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally." *Amos v. Cain*, No. 4:20-cv-7-DMB-JMV, 2021 U.S. Dist. LEXIS 52163, at *22 (N.D. Miss. Mar. 19, 2021).

Here, Defendants' request for injunctive relief is not based on their allegations made in any complaint because Defendants have not filed any complaint or counterclaims.

4

Plaintiff GSM has sued Defendants, not vice versa. Defendants asking the Court for injunctive relief at a stage where they have yet to even answer the live pleadings, let alone assert counterclaims, is akin to if GSM had filed a motion for preliminary injunction with this Court, without having filed a complaint. The procedural impropriety of Defendants' motion is evidenced by the fact that they argue for injunctive relief on the basis that **GSM** is ***unlikely*** to succeed on the merits of its case, even though the preliminary injunction standard requires showing that the ***movant*** is ***likely*** to succeed on the merits of its case. *See* Dkt. 18 at 3-4 ("Plaintiff Does Not Have a Likelihood of Success on Its Claim of Copyright Infringement" and "Plaintiff Does Not Have a Likelihood of Success on Its Lanham Act Claim."). Defendants cannot argue that they are likely to succeed on the merits of their case because they have no case—at this stage Defendants are merely defending against GSM's allegations.

Defendants' arguments that GSM is unlikely to succeed on the merits are essentially arguments that GSM's claims do not meet the 12(b)(6) standard. Indeed, in a letter to the Court, Defendant identified the three bases on which it will seek dismissal of GSM's First Amended Complaint. These three bases are ***identical*** to the three arguments Defendants made in their motion for preliminary injunction. *Compare* Dkt. 19, p. 1 *with* Dkt. 18, pp. 3-6. Thus, Defendants' motion is merely an attempt to bypass the Court's rules on pre-motion conferences for Rule 12 motions and should be denied on this basis alone.

**B. Defendants have not shown irreparable harm.**

Turning to the merits of Defendants' request, injunctive relief should be denied for several reasons, beginning with the fact that Defendants have completely failed to show

they will be irreparably harmed absent injunctive relief. Because Defendants have only offered a meager three sentences to support their claim of irreparable harm, the inquiry will begin, and should end, with this factor.

"An irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (footnotes and quotations omitted). Critically, the movant carries the burden of persuasion to show irreparable harm and an injunction cannot be granted without this showing. *PCI Transp. Inc. v. W.R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

1. <u>Defendants Sheng Chen and Chen Zubang failed to argue irreparable harm.</u>

Defendants Sheng Chen and Chen Zubang have not offered a single argument or piece of evidence to support their claim of irreparable harm, and thus have waived this argument. *See, e.g. Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

The entirety of Defendants' motion only contains one conclusory sentence to address the dispositive irreparable harm factor: "There is a substantial threat that Defendants in this case will suffer irreparable injury." Dkt. 18, pp. 6-7. This sentence is supported only by the Declaration of Defendant Haiying Cheng, which states that <u>Defendant Cheng</u> is being irreparably harmed. *See* Dkt. 18-1, ¶ 8 (***I*** am suffering irreparable harm to my ACTFIRE brand…" and "Not only am ***I*** being harmed due to the lack of sales but the removal of my listings is harming the reputation of my business activities.") (emphasis added). Defendant Cheng's declaration cannot and does not speak

6

to any alleged irreparable harm to Defendants Chen and Zubang. Thus, there is <u>no</u> evidentiary support in the record to suggest that Defendants Chen and Zubang will be irreparably harmed, and their request for injunctive relief should be denied on this basis alone. *Nabors Drilling Techs. USA, Inc. v. Helmerich & Payne Int'l Drilling Co.*, 2022 U.S. Dist. LEXIS 29431, at *8 (N.D. Tex. Feb. 18, 2022) ("A court may deny a preliminary injunction based on the absence of a single element alone, without reaching the other elements.").

    2. <u>Defendant Cheng has wholly failed to demonstrate irreparable harm.</u>

Defendant Cheng offers only three sentences in his declaration to support his argument for irreparable harm:

> I am suffering irreparable harm to my ACTFIRE brand due to the DMCA Complaint. This harm is immeasurable. Not only am I being harmed due to a lack of sales but the removal of my listings is harming the reputation of my business activities.

Dkt. 18-1, ¶ 8.

Defendant Cheng's vague, conclusory statements are wholly insufficient to meet the exacting standard for irreparable harm, because they show that harm to Defendant Cheng is, at best, speculative. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Nabors*, 2022 U.S. Dist. LEXIS 29431, at *8-9 ("A bare assertion of irreparable harm, or even a

7

possibility of irreparable harm, is not sufficient…") (internal citations and quotations omitted).

First, Defendant Cheng suggests that because he cannot sell the infringing products on Amazon, this will result in immeasurable harm. But lost sales are calculable, and thus, are compensable by money damages. *See Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (concluding no irreparable injury where the harm is financial and monetary compensation will make plaintiff whole); *Pruvit Ventures, Inc. v. ForeverGreen Int'l LLC*, 2015 U.S. Dist. LEXIS 174982, at *12 (E.D. Tex. Dec. 23, 2015) ("Moreover, under both Fifth Circuit precedent and Federal Circuit precedent, a harm is irreparable where there is no adequate remedy at law such as monetary damages. Accordingly, Defendants here must demonstrate that monetary damages are an insufficient remedy…") (internal citations and quotations omitted); *Bright Data v. Teso Lt*, 584 F.Supp. 3d 193, 196-97 (Feb. 10, 2022) (denying request for injunctive relief even there the parties were competitors because the movant's identified harms, loss of market share, loss of sales, and lost profits, were compensable by money damages). Moreover, Defendant Cheng sells several other products on Amazon, including other earmuff designs that do not infringe GSM's intellectual property rights. *See* Exhibit A and Exhibit B. There can be no irreparable harm from lost sales when only a fraction of Defendant Cheng's products have been removed from Amazon.

Second, Defendant Cheng suggests that he is suffering irreparable harm in the form of reputational damage. But "the showing of reputational harm must be concrete and corroborated, not merely speculative." *Pruvit*, 2015 U.S. Dist. LEXIS at *17 (internal

8

citations and quotations omitted); *Nabors*, 2022 U.S. Dist. LEXIS 29431, at *10 (finding that the allegation of reputational harm was "entirely speculative" where the movant only offered attorney argument, instead of evidence, to support its claim of reputational harm). Defendant Cheng's bare assertion that he is suffering reputational damages, without any explanation or corroborating evidence, simply cannot support a finding of irreparable harm.

Because Defendant Cheng has wholly failed to carry his burden to show irreparable harm in the absence of an injunction, the motion should be denied in its entirety.

**C. Defendants have not shown a likelihood of success on the merits.**

Given their utter failure to meet their burden on the irreparable harm factor, Defendants' motion should be denied. However, as argued below, Defendants' motion should also be denied for their failure to show likelihood of success on the merits. Because Defendants' merits arguments read like 12(b)(6) arguments, GSM will respond to them as such.

1. Defendants are not likely to defeat GSM's trade dress infringement claims.

As an initial matter, Defendants repeatedly mention the fact that GSM's trade dress is "unregistered" as though that is somehow case dispositive. *See, e.g.*, Dkt. 18 at 4. But there is no requirement that GSM register its trade dress, because the Lanham Act explicitly provides for recovery of infringement of an unregistered trade dress. *See CTC Int'l, Inc. v. Supply Change, LLC*, 2022 U.S. Dist. LEXIS 169870, at *5-6 (W.D. Tex. Sept. 19, 2022) ("To succeed on a claim of infringement of unregistered product design trade dress under the Lanham Act, a plaintiff must establish that its trade dress is not functional and has acquired secondary meaning, and that there is a likelihood of consumer confusion.").

9

Defendants argue that GSM is unlikely to succeed on the merits of its Lanham Act claims because GSM "has not asserted any discrete elements that are protected by its unregistered trade dress." Dkt. 18, p. 5. But GSM's First Amended Complaint alleged that its trade dress consists of the overall image, design, and appearance of its electronic ear mugs, including its "size, shape, color, color combinations, texture or graphics aspects," all of which are non-functional. *See, e.g.*, Dkt. 6, ¶ 59. This is sufficient for the pleading stage. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) ("Trade dress refers to the **total image and overall appearance of a product** and may include **features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product.**") (emphasis added); *see also Yeti Coolers, LLC v. JDS Indus., Inc.*, 300 F.Supp. 3d 899, 911 (W.D. Tex. March 9, 2018) (finding that plaintiff's articulation of "design and appearance of the profile" and "the style line, the color contrasts, and the tapers of the side walls" sufficient). Thus, GSM has sufficiently identified the discrete elements of its trade dress. Finally, GSM has submitted a letter to the Court requesting a pre-motion conference so that it may amend its FAC to identify its trade dress with more specificity.

Second, Defendants argue that GSM's products do not have secondary meaning because other companies sell similar products online. Dkt. 18, p. 5-6. Defendants cite no law to support this bizarre statement. *Id.* Merely because third parties have copied GSM's design and/or also sell electronic earmuffs does not negate GSM's trade dress rights in the specific product design of its earmuffs. If that were true, no company could ever claim trade dress rights in its specific product designs, simply because third parties were selling

10

the same product. Moreover, GSM has sufficiently alleged in its First Amended Complaint that its earmuffs have acquired secondary meaning:

> The Walker's® Razor® electronic ear muffs have been on the market for eight years, are featured in advertisements, displayed at trade shows; and are recognized by both retailers and end consumers. Furthermore, Courts have found "[p]roof of copying strongly supports an inference of secondary meaning." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*. 68 F. 4th 1203, *10 (9th Cir. 2023), citing *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 755 (9th Cir. 2018). Secondary meaning has also been found to be "a mental recognition in buyers' and potential buyers' minds that products connected with the [trade dress] are associated with the same source." *Jason Scott Collection, Inc.*, 68 F. 4th at *16, citing *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 873 (9th Cir. 2002).

Dkt. 6, ¶ 60. These allegations are sufficient to survive the 12(b)(6) standard. *Yeti Coolers, LLC*, 2017 U.S. Dist. LEXIS at *18-19 (finding allegations of extensive and continuous use of the trade dress, significant sales of the product, and expenditure of resources in advertising the trade dress sufficient to survive 12(b)(6)).

Even further, GSM's First Amended Complaint identified various consumers statements that clearly demonstrate that GSM's trade dress has acquired secondary meaning:

- In one YouTube video, a consumer identified Defendants' infringing earmuffs as "clearly a direct copy" of GSM's earmuffs, and stated he believed that both products "come from the same factor." Dkt. 6, ¶ 61.

- In a second YouTube video, a consumer did a side-by-side comparison of the products, stating "these are obviously made by the exact same manufacturer." Dkt. 6, ¶ 62.

11

- In a third YouTube video, a consumer stated that because the walkie talkie of GSM's earmuffs exactly fits the infringing earmuffs, "my assumption is that they are 100 percent coming out of the same factory…" Dkt. 6, ¶ 63.

*Medical-Legal Consulting Inst., Inc. v. Evans & Assocs.*, 2007 U.S. Dist. LEXIS 107733, at *7 (S.D. Tex. Aug. 29, 2007) ("The strongest indicator of secondary meaning is proof of actual confusion among consumers.") (quoting J. MCCARTHY, 2 MCCARTH ON TRADEMARKS AND UNFAIR COMPETITION § 15:11 (4th ed.1996). Defendants are not likely to defeat GSM's trade dress claims and their motion should be denied on this additional basis. Finally, GSM has submitted a letter to the Court requesting a pre-motion conference so that it may amend its FAC to add specificity to its secondary meaning claims.

2. <u>Defendants are not likely to defeat GSM's copyright infringement claims.</u>

Defendants argue that GSM cannot win on its copyright claim because GSM "is improperly expanding its copyright into the arena of design patents." Dkt. 18 at p. 3. This argument is premised on a single case, *Ultraflo*. But in *Ultraflo*, the issue before the Fifth Circuit was whether the district court had erred in ruling that Ultraflo's *unfair competition* claim was preempted by the *copyright laws*, not whether a copyright claim is preempted by the patent laws. *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 653, 655 (5th Cir. 2017), *cert. denied*, 137 S. Ct. 2266, 198 L. Ed. 2d 699 (2017). In fact, in *Ultraflo*, the defendant had even moved to dismiss Ultraflo's copyright claims from the pleadings on the basis that Ultraflo did not have a copyright registration, Ultraflo had not identified its copyright with sufficient particularity, and Ultraflo could not maintain that its public copyright was simultaneously trade secret. *Id.* at 654; <u>Exhibit C</u> at 5-7. The defendant never

12

argued that Ultraflo's copyright claim was barred by the patent laws. Indeed, the copyright claims ultimately survived the dismissal stage and were tried by a jury. Thus, *Ultraflo* does not apply to this case.

    3. <u>Defendants have not shown that GSM's state law claims are preempted.</u>

Defendants provide a single sentence from a case which states that the preemption statute "preempts state protection of works that fall within the subject matter…of copyright…" then vaguely argue that GSM's "multiple claims against Defendant of violation of state law, common law, and equity are thus preempted by the Copyright Act." Dkt. 18, p. 6. GSM has asserted five separate state law claims, including trade dress dilution, common law trade dress infringement, common law unfair competition, common law misappropriation, and unjust enrichment. Dkt. 6, pp. 28-34. Except for the conclusory statements identified above, Defendants offer no argument or explanation to support their position that each of these five claims are preempted. Defendants do not even make separate arguments as to why each of these five claims is preempted, instead lumping all five claims together.

Though Defendants failed to adequately brief the Court on preemption law, GSM will do so here and demonstrate to the Court that its claims are not preempted. Courts apply a two-part to determine whether the Copyright Act preempts a state cause of action: (1) is the intellectual property within the subject matter of copyright, and (2) if so, does the state law claim protect rights in that property that are equivalent to any of the exclusive rights within the general scope of copyright? 17 U.S.C. § 301(a); *see also Ultraflo*, 845 F.3d at 656.

First, GSM's trade dress dilution claim requires a showing of dilution and GSM's unfair competition claim is premised on consumer confusion. *See* Dkt. 6, pp. 28-30, 31-32. Neither claim is established solely on the basis of Defendants' copying, and thus, neither claim is preempted. *See Worth Beauty LLC v. Allstar Prods. Grp., LLC*, 2017 U.S. Dist. LEXIS 187392, at *29 (S.D. Tex. Nov. 13, 2017) (holding that trade dress dilution and unfair competition claims were not preempted by the copyright laws because they required a showing of the qualitatively different elements of consumer confusion and likelihood of dilution, respectively).

Second, GSM's unjust enrichment claim similarly is not preempted, because it requires a showing that Defendants took undue advantage of GSM. *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*, 965 F.3d 365, 379-80 (holding that an unjust enrichment claim was not preempted because it did not require a showing of mere copying, but required establishing wrongful conduct, i.e. the taking of an undue advantage).

Third, as explained by a Court in this Circuit, trade dress infringement claims are not preempted by the copyright laws:

> "The federal Copyright Act does not preempt the federal Lanham Act [which protects trade dress], or vice-versa. In fact, it is common practice for copyright owners to sue for both.... Such a litigation posture has never been disallowed by the courts on grounds of either preemption or impermissible double recovery." *Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 482 (5th Cir. 2003). And so, to the extent that the claims are based on accusations of trade dress infringement, they are not preempted.

Based on the same reasoning, GSM's state law trade dress infringement claims are not preempted.

### D. The balance of harm favors GSM.

As noted above, in addition to losing sales due to Defendants' infringement, consumers have also noted that Defendants' products are knock-offs of GSM's, which indicates a strong potential for consumer confusion and loss of goodwill if Defendants are permitted to sell their infringing products on Amazon. Because Defendants have wholly failed to carry their burden to show they are likely to succeed on the merits and have offered minimal, speculative evidence to support their contention of irreparable harm, the balance of harm favors GSM and weighs against granting an injunction.

### E. The public interest weighs against an injunction.

As alleged in GSM's Complaint, GSM's electronic earmuffs comply with the Environmental Protection Agency's Noise Reduction Ratings Requirements under 40 C.F.R. Part 211, Subpart B. Dkt. 6, ¶¶ 20-21. All hearing protectors manufactured for distribution in the United States are subject to the testing and labelling requirements of the EPA regulations, for the health and safety of those who use the protectors. While GSM complies with the EPA regulations, it is unknown whether Defendants comply with these same requirements in selling their knock-off earmuffs. Thus, an injunction would permit Defendants to potentially sell products that risk the health and safety of consumers. Moreover, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act…" *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F.Supp.2d 888, 928 (S.D. Tex. 2014). Thus, the public interest weighs in favor of denying Defendants' request for an injunction.

Dated: September 14, 2023  Respectfully submitted,

/s/ J. David Cabello
**J. David Cabello**
Attorney-in-charge
Texas Bar No. 03574500
S.D. Texas I.D. No. 3514
Email: david@chzfirm.com
**Munira Jesani**
Texas Bar No. 24101967
S.D. Texas I.D. No. 3019538
Email: mjesani@chzfirm.com
**CABELLO HALL ZINDA, PLLC**
801 Travis Street, Suite 1610
Houston, TX 77002
Tel.: 832.631.9990
Fax: 832.631.9991

***ATTORNEYS FOR PLAINTIFF GSM***

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 14, 2023, counsel for GSM initiated service of the foregoing document via the Court's ECF system.

*/s/ John Watkins*
John Watkins
Paralegal

16