**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS - HOUSTON DIVISION**

| | | |
|---|---|---|
| **GOOD SPORTSMAN MARKETING, LLC** | § § | |
| *Plaintiff*, | § | |
| **vs.** | § | **CASE NO. 4:23-cv-2371** |
| | § | |
| **SHENG CHEN,** | § § | |
| | § | |
| *Defendant.* | § § | |
| | § | **JURY DEMANDED** |

**PLAINTIFF'S SECOND AMENDED COMPLAINT AND REQUEST FOR
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

TO THE HONORABLE COURT:

Plaintiff Good Sportsman Marketing, LLC ("GSM"), by and through its attorneys, files

this Original Complaint, requesting preliminary and permanent injunctive relief and damages for

copyright infringement under the United States Copyright Act (17 U.S.C. §501 et seq.), violations

of the Lanham Act (15 U.S.C. §1125(a)(1)(A)), violations of Tex. Bus. & Com Code §16.104,

unjust enrichment, and unfair competition against Sheng Chen individually ("Defendant") and

any as yet unknown entities controlled by or acting under his direction and/or in concert with him

in the manufacturing, marketing, distribution and sale of copyright infringing goods (collectively

"Defendants").

**Nature of the Case**

1.      This is an action for copyright infringement of GSM's federally registered

copyrights under the Copyright Act (Title 17 of the United States Code), violation of the Lanham

Act (15 U.S.C. §1125(a)(1)(A)), violations of Tex. Bus. & Com Code §16.104, common law

trade dress infringement, unjust enrichment, misappropriation and unfair competition including

through violations of the Noise Reduction Act (EPA Noise Reduction Ratings Requirements (40 C.F.R. Part 211, Subpart B)).

2. GSM seeks permanent injunctive and monetary relief, including damages for willful infringement under the Copyright Act and the Lanham Act.

### The Parties

3. Plaintiff GSM is a company organized and doing business under the laws of Delaware with currently headquartered in Irving, Texas, with prior headquarters in Grand Prairie Texas.  Plaintiff sells, advertises, and markets its products nationwide through major retailers such as Amazon, Academy Sports and Outdoors, Bass Pro Shops, Cabela's, Dick's Sporting Goods, Home Depot, MidwayUSA, Range USA, Sam's Club, Sportco, Sportsman's Warehouse, and Walmart among others as well as through its own websites (https://www.walkersgameear.com).

4. On information and belief, Defendant Sheng Chen is a Chinese citizen residing in Ningbo, China with an address of Qiuga Town, Yinzhou Dist., No.161 Qianshuiwan Community, Ningbo, Zhejiang CHINA 315100 per the records of the United States Patent and Trademark Office.  Sheng Chen is shown in said records as the owner of the ACT FIRE, HITAIM, GLORYFIRE and FIREGEAR registered trademarks under which infringing goods have been sold.  Defendant has made extensive use of the United States market for sale of goods and has extensively relied on the intellectual property protections of the United States of America ("US") including through twenty-three US trademark registrations including ACT FIRE, HITAIM, GLORYFIRE and FIREGEAR.  Defendant may be served with process by the attorney who has asserted to represent Defendant, Mr. Jianyin Liu, The Law Offices of James Liu PLLC, 15750 SW 92nd Ave Unit 20C, Palmetto Bay, FL 33157.

Second Amended Complaint:  GSM v Sheng Chen

**Jurisdiction and Venue**

5.      Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to United States Copyright Act (17 U.S.C. §501 et seq.), 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1332(a) (diversity of citizenship between the parties).  This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. §1367.

6.      This Court has personal jurisdiction over the Defendant because, *inter alia*, Defendant does business in the State of Texas, including in this District.  On information and belief, (i) Defendant has advertised, promoted, offered for sale, sold, distributed, and/or imported, and continues to advertise, promote, offer for sale, sell, distribute, and/or import, infringing products to customers and/or potential customers, including in this District, at least through the AMAZON website where Defendant Sheng Chen is believed to maintain an AMAZON storefront entitled ACT FIRE US.  A number of color options are offered for infringing goods, each of which are shown to be "shipped by Amazon" and each of which are available with next day or two day delivery to the Houston Area, a fact strongly suggesting that infringing products are present in at least one of the many AMAZON warehouse facilities in the Houston area; (ii) Defendant's tortious acts giving rise to this lawsuit and harm to GSM have occurred and are occurring in the State of Texas, including this District, (iii) Defendant acted with knowledge that its unauthorized use of GSM's rights would cause harm to GSM in the State of Texas and in this District; (iv) Defendant's customers and/or potential customers reside in the State of Texas, including in this District, and (v) Defendant benefits financially from the Texas market, including, for example, through sales of infringing products manufactured by or for Defendant that

ultimately occur in Texas, including in this District.  Further, on information and belief, Defendant has sold infringing products for distribution throughout the United States, including Texas and this District, and has delivered infringing products into the stream of commerce with the expectation that they would be purchased by consumers in Texas, including in this District.

7.      Alternatively, on information and belief, this Court may exercise personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2).

8.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391©(3).

**GSM's Intellectual Property**

9.      GSM is a leading provider of sporting goods to hunters in North America.  For many years, GSM has continuously engaged in the development, manufacture, and sale of hearing protective ear muffs for hunters and shooters.  GSM created unique, distinctive, and non-functional designs to use with electronic ear muffs under the Walker® Razor® brand.  The design of the Walker® Razor® brand of electronic ear muffs that is the subject of this case was created in 2015 and introduced into the marketplace in early 2016.  GSM has extensively and continuously promoted and used these designs for the subsequent eight years in the United States and in Texas.  Walkers® Razor® electronic ear muffs are one of GSM's most popular products and, since introduction to the market in 2016, Walkers® Razor® brand electronic ear muffs have become a leading brand of electronic ear muffs among hunters and recreational shooters.  GSM has sold 4,500,000 units of the Walker® Razor ®brand electronic ear muffs.  Through such extensive and continuous promotion and use, GSM's Walker® Razor® designs have become well-known indicators of the origin and quality of GSM's hearing protective ear muffs.

10.     The Walker® Razor® electronic ear muffs design drawings are protected works under the United States Copyright Laws.  These design drawings are wholly original works and

are fixed in various tangible products, thereby qualifying as copyrightable subject matter under the United States Copyright Act, 17 U.S.C. Sections 101 et seq.

11.     GSM is the federally registered copyright owner of the design drawings of the Walker® Razor® electronic ear muffs.   GSM's US Copyright Registration Nos. are Vau001419213 / 2020-10-28, Supplement to: Vau001377848 / 2019 for "Electronic Ear Muffs." The Supplement corrected only the spelling of the registrant's address from "Prairie" to "Praire." A copy of the original registration certificate and the technical drawing submitted for registration are attached hereto as Exhibit 1.  The Supplement record is attached at Exhibit 2.

12.     The registration of the work was made within 5 years of the first publication of the work and the certificate of registration serves as prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. §410©.

13.     At all times relevant hereto, GSM has been the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Walker® Razor® electronic ear muffs drawings, and such copyrights are valid, subsisting and in full force and effect.

14.     Images of GSM's federally registered copyright design drawings are shown below:



| GSM Copyright Registration | GSM Copyright Registration |
|---|---|

15.     Upon information and belief, Defendants have obtained their infringing ear muffs from factories that have access to GSM's copyrighted design drawings, and/or derivatives of these drawings which include the molds used to make the ear muffs.  These drawings and molds are being used to create Defendant's infringing ear muffs.

16.     Exemplary images of the Walker's® Razor® Electronic ear muffs are shown below:

**GSM Copyrighted Design**



17.     GSM is also the owner of federally registered United States Trademark Registration No. 3630504 for the trademark "Walker's" in connection with sound enhancement and personal safety for hunters and software and United States Trademark Registration No. 5147672 for the trademark "Razor" in connection with hearing muffs for protecting hearing.

18.     GSM's Walker® Razor® designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, GSM owns trade dress rights relating to its electronic ear muff designs.  The designs of the Walker® Razor® ear muffs have distinctive and non-functional features that identify to consumers that the origin of the Walker® Razor® Ear muffs is GSM.  Specifically, the trade dress consists of the overall appearance of the ear muffs, including the overall shape of the ear muffs, the color of the ear muffs, the color of the text, the exact shape of the ear pieces, the selected placement of the power/volume wheel on the ear piece along with illustrative text, the three horizonal lines on each ear piece, the banner running along the headband, and the exact placement of the microphone on the ear piece. GSM's trade dress is not functional because the overall appearance and arrangement of these various elements serves no functional purpose. For example, the color and shape of the ear muffs is not essential to use of the product. The design elements, such as the horizonal lines, color of the text, etc. are also not essential to using the ear muffs. The ear pieces themselves are functional, but trade dress is only claimed in the shape of the ear pieces, which is not functional. The headband connecting the ear pieces is itself functional, but the banner added to this band is purely stylistic. The text, microphone, and volume button are functional, but the design choice on where to place these elements is not functional. Overall, competitors would not be at a disadvantage if they designed ear muffs with different design features, as evidenced by Defendant's sale of non-infringing ear muffs.  As a result of at least GSM's continuous and exclusive use of the Walker® Razor® electronic ear muffs, GSM's marketing, advertising, and sales of the Walker® Razor® electronic ear muffs, and the highly valuable goodwill and substantial secondary meaning acquired as a result, GSM owns trade dress rights in the designs

and appearances of the Walker® Razor® electronic ear muffs, which consumers have come to uniquely associate with GSM.

19.     GSM has invested substantial resources in building its trade dress. It has been using this trade dress continuously for at least eight years and invested substantially in the trade dress by spending on marketing and advertising, as evidenced by GSM's consistently high sales of the ear muffs.

20.     GSM complies with EPA Noise Reduction Ratings Requirements required under 40 C.F.R. Part 211, Subpart B.   Every hearing protector manufactured for distribution in commerce in the United States is subject to the requirements of 40 C.F.R. Part 211 including specific testing and labelling requirements as to Noise Reduction Ratings considered sufficiently important to health as to be the basis of federal regulation.   Under the EPA Noise Labelling Requirements, manufacturers are responsible for conducting noise tests on their products according to the EPA procedures and are responsible for test accuracy.   Manufacturers are also responsible for assuring that labels contain all necessary information and that they are properly affixed to the products or product packaging, and convey information to prospective users in the fashion stipulated by EPA regulations.

21.     Per the regulation at 40 C.F.R. § 211.104 the required label requires not only the Noise Rating for the product but also requires (d) A product manufacturer identification consisting of: (1) The Company name, and (2) The City and State of the principal office and (e) A product model number or type identification.   An example of a label conforming to EPA regulations is shown below:



22.     GSM's complaint labelling is shown below:



23.     GSM goes to the effort and expense of complying with EPA Noise Reduction Requirements in both testing and labelling.

24.     In August 2022, GSM submitted to AMAZON a complaint of copyright infringement by sales of copyright infringing electronic ear muffs under the ACT FIRE mark. On September 20, 2022, ACT FIRE, through counsel Howard M. Cohn, responded to the Amazon

complaint and generally demurred as to the alleged infringement but also stated that ACT FIRE would stop selling product once remaining inventory was sold.

25.     As sales had not ceased, on November 11, 2022, Usha Menon, on behalf of GSM, sent a letter Howard M. Cohn formally noticing ACT FIRE of copyright infringement and that continued use of the work constituted willful infringement.  On November 30, 2022, ACT FIRE, through counsel Daniel M. Cohn, again generally demurred as to infringement but also stated that ACT FIRE would stop selling product once remaining inventory was sold with an expected date of May 2023.

26.     On May 26, 2023, Cabello Hall and Zinda sent cease and desist letters directly to Sheng Chen as owner of the ACT FIRE, HITAIM, FIREGEAR and GLORYFIRE marks.  On May 30, 2023, Mr. Chen responded that he did not authorize sale of the accused ear muffs under the GLORYFIRE mark, made no comments as to the ACT FIRE, HITAIM, and FIREGEAR marks under which infringing products are sold and stated he would provide an official response within seven days.

27.     One June 8, 2023, an email was sent to Cabello Hall Zinda from Nicole, asserting to be brand manager for ACT FIRE, again demurring on the issue of infringement, stating that "due to unfavorable factors such as the pandemic our company was unable to sell all the products by May 2023."  Nicole provided a new anticipated date to clear inventory to be the end of December 2023.

28.     On June 12, 2023, Cabello Hall Zinda stated that "It appears that rather than attempt to reduce its inventory, ACT Fire has increased its inventory and has added additional product under its related trademarks."   An offer was made to allow ACT FIRE sales to continue through July 2023 with a 15% royalty.

29.     On June 14, 2023, an email was sent to Cabello Hall Zinda from Nicole, asserting to be brand manager for ACTFIRE, and noting the "To demonstrate our commitment to resolving the dispute, we have proactively contacted the brand owners and distributors of GloryFire, Hitaim, and FireGear, persuading them to stop selling this product. Due to the large quantity of inventory, Act Fire would incur significant losses if immediately ceasing sales."  Nicole asserted that US counsel advised that the risk of infringement was low.

30.     On June 16, 2023, Cabello Hall Zinda reiterated demands with an option to either immediately cease sales or allow ACT FIRE sales to continue through July 2023 with a 15% royalty.

31.     On June 19, 2023, an email was sent to Cabello Hall Zinda from Mr. Jianyin Liu asserting that "The Law Offices of James Liu PLLC represent the owners of the products under FIREGEAR, GLORYFIRE, HITAIM and ACT FIRE, namely Mr. Sheng Chen, in Ningbo, China."  One June 20, 2023, Jianyin Liu conveyed that Mr. Chen would be willing to settle for $5,000 with the ability to continue selling until October 2023.

32.     On June 23, 2023, Cabello Hall Zinda firmly rejected the "offer" and reiterated demands to immediately cease sales.  As it had become abundantly clear that Mr. Chen had no interest in ceasing willful infringement activities, the suit was commenced.

### Sheng Chen's Unlawful Activities

33.     As explained in greater detail herein, GSM brings this case against Sheng Chen and any as yet unknown related entities for unlawfully infringing GSM's exclusive rights by copying GSM's design of the Walker's Razor ear muffs protected under GSM's copyrights and trade dress.  Defendant has obtained its ear muffs from factories that have exactly copied GSM's Walker's Razor design drawing and used molds based off of these drawings, in at least four brands

of electronic ear muffs sold on the AMAZON marketplace, ACT FIRE, HITAIM, FIREGEAR and GLORYFIRE.  It appears that since a demand letter dated May 26, 2023 regarding each of these brands, on June 26, 2023, the GLORYFIRE and FIREGEAR sites show the accused products as unavailable.  Infringing products continue to be sold under the ACT FIRE and HITAIM marks.

34.     It is noted that on Defendant's trademark registration for ACT FIRE for noise cancelling headphones the stated date of first use in commerce was September 2, 2020, after GSM's registration of its copyright.

35.     Defendant violates GSM's intellectual property rights by trading off of the goodwill of the GSM's popular and unique design, selling, advertising, and offering for sale competitive products in interstate commerce that infringe GSM's copyrights and trade dress. Upon information and belief, Defendant obtains these infringing ear muffs from a factory that has access to GSM's copyrighted design drawings and molds. Defendant is exploiting GSM's copyright and trade dress protected design for commercial purposes without GSM's consent, while also causing confusion in the marketplace through copying of the design so exactly that consumers have concluded that the Walker's® Razor® ear muffs and at least the ACT FIRE brand ear muffs are made in the same factory.  Defendants' unlawful conduct causing confusion in the marketplace constitutes an unlawful attempt to trade on GSM's goodwill and reputation for quality products, thereby causing dilution of GSM's marks and reputation.

36.     As a result of Defendants' unlawful conduct, GSM has lost and continues to lose sales.  Due to the direct copying of GSM's products, the purchasing public believes GSM's and Defendants products to be made in the same factory.  This action causes a false impression that

defendant's products have a connection to GSM thus causing irreparable damage to GSM's reputation.

37.    The Noise Reduction Labelling of Defendant's products is in violation of 40 C.F.R. §211.104, in several important aspects including by failure to identify the product manufacturer, address or the model.  It is unknown whether the products actually meet the stated noise reduction levels.



38.    GSM seeks temporary and permanent injunctive relief, namely, to enjoin Defendant Sheng Chen and related entities from further sales, promotion, and advertisement of infringing products in the United States.  GSM seeks an order for monetary damages and attorney's fees for willful copyright and trade dress infringement.  GSM further seeks an order directing the destruction of all infringing products and means of making said products in Sheng Chen's possession and control.

## COUNT 1
## Copyright Infringement (17 U.S.C. § 501(a))

39.     GSM repeats and realleges the allegations set forth above as if fully set forth herein.

40.     The GSM Walker's® Razor® ear muffs are protected under the United States Copyright Act, Title 17 of the United States Code.  All copyrightable aspects of the GSM's Walker's® Razor® Electronic Ear Muffs were registered with the United States Copyright Office in 2019 as VAu001377848 and supplemented in 2020 as VAu001419213 (only to correct the spelling of the copyright owner's address).  The design drawing of the Walker's® Razor® Electronic Ear Muffs was considered to be copyrightable material by the U.S. Copyright Office and the copyright is presumed to be valid.  A copy of the copyright registrations and the copyrighted work is attached hereto at Exhibit 1 and 2.

41.     Upon information and belief, Defendants are obtaining these ear muffs from a factory that has access to GSM's copyrighted design drawings and molds.

42.     An image of the actual Walker's® Razor® Electronic Ear Muffs and one image of the copyrighted design is shown below:

| GSM Copyrighted Design | Actual Walker's® Razor® Electronic Ear Muff |
|---|---|



43. Follows are images comparing one example of the many infringing Act Fire articles with the copyright protected GSM design marketed by GSM under the Walker's® Razor® mark.



44. Sheng Chen has violated GSM's copyrighted design of the Walker's® Razor® ear muffs through sale of many versions of infringing electronic ear muffs under the ACT FIRE mark as shown below:

| AMAZON ASIN and links | |
|---|---|
| **B07Y5CM2B5**<br>https://www.amazon.com/dp/B07Y5CM2B5/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1<br> | **B07Y57R5K8**<br>https://www.amazon.com/ACTFIRE-Protection-Electronic-Amplification-Reduction/dp/B07Y57R5K8?ref_=ast_sto_dp&th=1&psc=1<br><br> |
| **B07Y589YB3**<br>https://www.amazon.com/dp/B07Y589YB3/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1<br><br> | **B07ZQ116CY**<br>https://www.amazon.com/dp/B07ZQ116CY/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1<br><br> |



| **B0813B7TKZ**<br>https://www.amazon.com/dp/B0813B7TKZ/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1 | **B097SYXDS6**<br>https://www.amazon.com/Protection-Hearing-Shooting-Range-Earmuffs/dp/B097SYXDS6?ref_=ast_sto_dp&th=1&psc=1 |
|---|---|
|  |  |
| **B0BXD5N7HC**<br>https://www.amazon.com/dp/B0BXD5N7HC/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1 | **B0BXD7GTHB**<br>https://www.amazon.com/dp/B0BXD7GTHB/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1 |
|  |  |

| B0BXD8SJZQ | B0C643DHBV |
|---|---|
| https://www.amazon.com/dp/B0BXD8SJZQ/ref=twister_B0C643DHBV?_encoding=UTF8&th=1&psc=1 | https://www.amazon.com/ACT-FIRE-Protection-Shooting-Earmuffs/dp/B0C643DHBV |



45.     Sheng Chen has also violated GSM's copyrighted design of the Walker's®

Razor® ear muffs through sale of electronic ear muffs under the FIREGEAR, GLORYFIRE and

HITAIM marks as shown below:

| FIREGEAR | GSM Copyrighted Design |
|---|---|



| GLORYFIRE | GSM Copyrighted Design |
|---|---|
| HITAIM | GSM Copyrighted Design |



46.     As is readily apparent, the ACT FIRE, FIREGEAR, GLORYFIRE, and HITAIM branded ear muffs directly copy virtually all artistic elements of the GSM copyrighted design drawings including the sculptural shapes of each of the two ear muffs, the placement and design of the on/off volume control, the design and placement of the microphones, the design and placement of the audio input jack, the decorative aspects of the headband, and the decorative lines on the ear muff casing below the volume controls.  None of these features are dictated by utility but are rather artistic aspects of the design.  This fact was undoubtedly appreciated by the US Copyright Office in granting registration of a copyright.

47.     Design alternatives to all of the above features are readily available and indeed are employed by many manufacturers.  Sheng Chen has even occasionally employed by ear muffs sold under the ACT FIRE mark that lack the design elements found in the copyrighted GSM design.  One such example of a non-infringing design is shown below:



| Infringing ACT FIRE model | Non-infringing ACT FIRE Model |

48.     Defendant intentionally infringed GSM's copyrights in the Walker's® Razor® electronic ear muff design without GSM's consent or authorization.

49.     Defendant infringed GSM's copyrights in violation of 17 U.S.C. §501 et seq.

50.     Upon information and belief, Defendant(s) has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.  Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

51.     Defendants' acts have damaged and will continue to damage GSM, and GSM has no adequate remedy at law for the continued sale of Defendants infringing products.

52.     GSM is entitled to injunctive relief, and GSM is entitled to recover at least Defendant's profits and GSM's actual damages, enhanced damages, costs, and reasonable attorney fees or statutory damages including for willful infringement under 17 U.S.C. §504.

## <u>COUNT II</u>
## <u>Lanham Act Violations (15 U.S.C. § 1125(a)(1)(A)</u>

53.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

54.     Defendant's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing GSM's trade dress.  Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused actual confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendant's products with GSM and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with GSM.

55.     GSM's trade dress is entitled to protection under the Lanham Act.  The Lanham Act protects against another's use of "any word, term, name, symbol, or device, or any

Second Amended Complaint:  GSM v Sheng Chen

combination thereof . . . which . . . is likely to cause confusion, or to cause mistake . . . as to the origin . . . of his or her goods. . . ."  15 U.S.C. § 1125(a)(1)(A).  This includes a product's "trade dress," which "refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1257 (9th Cir. 2001) (internal quotation marks and citation omitted).

56.    GSM's trade dress includes unique, distinctive, and non-functional designs.  GSM has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, GSM's trade dress under the Walker's Razor marks has become a well-known indicator of the origin and quality of GSM's products.  GSM's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, GSM's trade dress acquired this secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with the infringing products.

57.    An action for trade dress infringement requires proof that: "(1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Id.*  The total image, design, and appearance of the Walker's® Razor® electronic ear muff including size, shape, color, color combinations, texture or graphics aspects of the design are unique and distinctive and are not dictated by function.  Design alternatives to all of the above artistic features are readily available and indeed are employed by many manufacturers.

58.    The claimed trade dress serves a source-identifying role because it is inherently distinctive and has acquired secondary meaning.  The Walker's® Razor® electronic ear muffs

have been on the market for eight years, are featured in advertisements, displayed at trade shows; and are recognized by both retailers and end consumers.  Furthermore, Courts have found "[p]roof of copying strongly supports an inference of secondary meaning." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC.* 68 F. 4th 1203, *10 (9th Cir. 2023), citing *Adidas Am., Inc. v. Skechers USA, Inc*., 890 F.3d 747, 755 (9th Cir. 2018).  Secondary meaning has also been found to be "a mental recognition in buyers' and potential buyers' minds that products connected with the [trade dress] are associated with the same source." *Jason Scott Collection, Inc.,* 68 F. 4th at *16, citing *Japan Telecom, Inc. v. Japan Telecom America Inc., 287 F.3d 866, 873 (9th Cir. 2002).*

59.   Defendant's product has created not only the likelihood of but also actual consumer confusion.  Upon information and belief, Defendants had access to and copied the Walker® Razor® design in a virtually identical manner with the clear intent of capitalizing off the goodwill and success of GSM's design.  The copy is so exact that consumers believe the infringing Act Fire product to be "clearly a direct copy" of GSM's Walker® Razor® ear muffs and "I suspect these might come from the same factory" as shown in the side by side comparison YouTube video at https://www.youtube.com/watch?v=s_BwzYXg788 (Peace, Love and Guns at 0.11/17.50 and 1.28/17.50) screen shots of which are reproduced below:



ActFire 🔥 Vs Walkers Electronic Hearing Protection Ear Muffs Review Video Cheap BUT Are



60.    The copy is so exact that numerous consumers believe the infringing product and GSM's Walker's® Razor® ear muffs to be made in the same factory.  In another Act Fire versus GSM's Walker's® Razor® ear muffs side by side comparison on YouTube video, the reviewer states the "these are obviously made by the exact same manufacturer" as shown in the screen shot of which is reproduced below from https://www.youtube.com/watch?v=RUBTLFlX2xU&t=1s (PNW Outdoor Reviews 4.25:6:20)



61.     In yet another Act Fire versus GSM's Walker's® Razor® ear muffs side by side comparison YouTube video, the reviewer states that because the Walker's walkie talkie fits the Act Fire exactly, "my assumption is that they are 100 percent coming out of the same factory as the Walker's slims and that is obvious only because of the fact um that the Walkie fits on perfectly" as shown in the screen shot from the Delta Bear YouTube site https://www.youtube.com/watch?v=JFPDOzUOCEU (3:36/12:28) reproduced below:





ACT FIRE EAR PRO & WALKER'S RAZOR WALKIE TALKIE.

Delta Bear
29 subscribers      **Subscribe**

62.    Defendants intentionally infringed GSM's trade dress in the Walker's® Razor® electronic ear muff design without GSM's consent or authorization.

63.    Defendants have infringed GSM's trade dress in violation of 15 U.S.C. §1125(a)(1)(A).  Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.  Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

64.    Defendants' use of GSM's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to GSM for

which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress.

65.     On information and belief, Defendant's use of GSM's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the virtual identity of the infringing products to GSM's trade dress and by Defendant's continuing disregard for GSMs rights.

66.     GSM is entitled to injunctive relief, and GSM is entitled to recover at least Defendant's profits, GSM's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
### Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103

67.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

68.     Based on the activities described above, including, for example, Defendant's advertising, promoting, offering for sale, selling, and distributing the infringing products, Defendant is likely to dilute, has diluted, and continues to dilute GSM's trade dress in violation of §16.103 of the Texas Business & Commerce Code.  Defendant's use of GSM's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of GSM's trade dress at least by eroding the public's exclusive identification of GSM's trade dress with GSM, by lessening the capacity of GSMs trade dress to identify and distinguish GSM's products, by associating GSM's trade dress with products of inferior quality, and by impairing the distinctiveness of GSM's trade dress.

69.     GSM's trade dress has acquired secondary meaning and is entitled to protection under Texas law.

70.     GSM's trade dress includes unique, distinctive, and non-functional designs.  GSM has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that extensive and continuous use, GSM's trade dress has become a well-known indicator of the origin and quality of GSM's products in the United States and in the State of Texas generally and in geographic areas in Texas, and GSM's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of GSM's and GSM's products. GSM's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.   Moreover, GSM's trade dress acquired this secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with the infringing products.

71.     Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress, GSM's products, and GSM.

72.     On information and belief, Defendant's use of GSM's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the direct copying GSM's trade dress and by Defendant's continuing disregard for GSM's rights.

73.     GSM is entitled to injunctive relief, and GSM is also entitled to recover at least Defendant's profits, GSM's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**COUNT IV**

Second Amended Complaint:  GSM v Sheng Chen

### Common Law Trade Dress Infringement

74.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 70 as though fully set forth herein.

75.     Defendant's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with GSM, constitute common law trade dress infringement, at least because Defendant's use of GSM's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with GSM.

76.     GSM's trade dress is entitled to protection under the common law.  GSM's trade dress includes unique, distinctive, and non-functional designs.  GSM has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, GSM's trade dress has become a well-known indicator of the origin and quality of GSM's products. GSM's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, GSM's trade dress acquired this secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with the infringing products.

77.     Defendant's use of GSM's trade dress, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress, GSM's products, and GSM.

78.     On information and belief, Defendant's use of GSM's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the infringing products to GSM s trade dress and by Defendant's continuing disregard for GSM's rights.

79.     GSM is entitled to injunctive relief, and GSM is also entitled to recover at least GSM's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## COUNT V
## Common Law Unfair Competition

80.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

81.     Defendant's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with GSM, constitute common law unfair competition, by simulating GSM's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with GSM.   Defendant has also interfered with GSM's business.

82.     GSM's trade dress is entitled to protection under the common law.  GSM's trade dress includes unique, distinctive, and non-functional designs.  GSM has extensively and continuously promoted and used GSM's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, GSM's trade dress have become well known indicators of the origin and quality of GSM's products. GSM's trade dress in the Walker's® Razor® ear muffs have also acquired substantial secondary meaning in the marketplace including as evidenced by copying.  Moreover, GSM's trade dress acquired this

secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with the infringing products.

83.     Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress, GSM s products, and GSM.

84.     On information and belief, Defendant's use of GSM's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the infringing products to GSM's trade dress, and by Defendant's continuing disregard for GSM's rights.

85.     GSM is entitled to injunctive relief, and GSM is also entitled to recover at least GSM's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## COUNT VI
## Common Law Misappropriation

86.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 82 as though fully set forth herein.

87.     Defendant's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with GSM, constitute common law misappropriation.

88.     GSM created the products covered by GSM's trade dress through extensive time, labor, effort, skill, and money including compliance with Federal Noise Reduction Labeling Regulations, which Defendant has not complied with.  Defendant has wrongfully used GSM's trade dress and/or colorable imitations thereof in competition with GSM and gained a special

Second Amended Complaint:  GSM v Sheng
Chen

advantage because Defendant was not burdened with the expenses incurred by GSM. Defendant has commercially damaged GSM, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with GSM, and by taking away sales that GSM would have made.

89.     GSM's trade dress is entitled to protection under the common law. GSM's copyrighted design and trade dress includes unique, distinctive, and non-functional designs. GSM has extensively and continuously promoted and used GSM's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, GSM's trade dress has become a well known indicator of the origin and quality of GSM's products. GSM's trade dress have also acquired substantial secondary meaning in the marketplace, including as evidenced by copying by others including Defendant. Moreover, GSM's trade dress acquired this secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with the infringing products.

90.     Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress, GSM's products, and GSM. Moreover, as a result of its misappropriation, Defendant has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that GSM invested in establishing the reputation and goodwill associated with GSM's trade dress, GSM's products, and GSM.

91.     Defendant's misappropriation of GSM's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the infringing products to GSM's trade dress, and by Defendant's continuing disregard for GSM's rights.

92.     GSM is entitled to injunctive relief, and GSM is also entitled to recover at least GSM's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## Count VII
## Unjust Enrichment

93.     GSM realleges and incorporates the allegations set forth in paragraphs 1 through 89 as though fully set forth herein.

94.     Defendant's advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with GSM, constitute unjust enrichment, at least because Defendant has wrongfully obtained benefits at GSM's expense.  Defendant has also, *inter alia*, operated with an undue advantage by avoiding the costs of development, advertising and promotion that made Walker's® Razor® ear muffs a preferred product in the relevant market and without the effort and expense of federally required testing and labelling as to Noise Reduction Requirements.

95.     GSM created the products covered by GSM's copyrights and trade dress through extensive time, labor, effort, skill, and money. Defendant has wrongfully used and is wrongfully using GSM's trade dress and/or colorable imitations thereof, in competition with GSM, and has gained and is gaining a wrongful benefit by undue advantage through such use. Defendant has not been burdened with the expenses incurred by GSM, yet Defendant is obtaining the resulting benefits for its own business and products.

96.     GSM's trade dress is entitled to protection under the common law. GSM's trade dress includes unique, distinctive, and non-functional designs. GSM has extensively and continuously promoted and used GSM's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, GSM's Walker's® Razor® brand trade dress has become well known indicators of the origin and quality of GSM's products.  GSM's trade dress has also acquired substantial secondary meaning in the marketplace including as evidence by direct copying thereof.  Moreover, GSM's trade dress acquired this secondary meaning before Defendant commenced its unlawful use of GSM's trade dress and/or colorable imitations thereof in connection with the infringing products.

97.     Defendant's use of GSM's trade dress and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with GSM's trade dress, GSM's products, and GSM. GSM accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendant has wrongfully obtained and is wrongfully obtaining a benefit at GSM's expense by taking undue advantage and free-riding on GSM's efforts and investments, and enjoying the benefits of GSM's hard-earned goodwill and reputation.

98.     Defendant's unjust enrichment at GSM's expense has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the identity of the infringing products to GSM's trade dress, and by Defendant's continuing disregard for GSM's rights.

99.     GSM is entitled to injunctive relief, and GSM is also entitled to recover at least Defendant's profits.

**Demand for Jury Trial**

GSM hereby demands a jury trial on all issues so triable.

**Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.      Judgment that Defendant has (i) infringed GSM's copyrights in violation of Title

17 of the United States Code; (ii) infringed GSM's trade dress in violation of § 1125(a) of Title

15 of the United States Code; (iii) violated GSM's trade dress in violation of Tex. Bus. & Com.

Code § 16.103; (iv) violated GSM's common law rights in GSM's trade dress; (v) engaged in

common law unfair competition; (vi) engaged in common law misappropriation; and (vii) been

unjustly enriched at GSM's expense, and that all of these wrongful activities by Defendant were

willful;

2.      An injunction against further infringement and dilution of GSM's copyright and

trade dress, and further acts of unfair competition, misappropriation, and unjust enrichment by

Defendant, and each of its agents, employees, servants, attorneys, successors and assigns, and all

others in privity or acting in concert with any of them, including at least from selling, offering to

sell, distributing, importing, or advertising the infringing products, or any other products that use

a copy, reproduction, or colorable imitation of GSM's copyrighted material and trade dress,

pursuant to at least 17 U.S.C. §502, 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 6.104;

3.      An Order directing Defendant to recall all infringing products sold and/or

distributed and provide a full refund for all recalled infringing products;

4.      An Order directing the destruction of (i) all infringing products, including all

recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable

imitation of GSM's trade dress in Defendant's possession or control, (iii) all plates, molds, and

other means of making the infringing products in Defendant's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Defendant's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5. An Order directing Defendant to publish a public notice providing proper attribution of GSM's copyright and trade dress to GSM, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6. An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 17 U.S.C. § 603 and 15 U.S.C. § 1125(b);

7. An award of Defendant's profits, GSM's actual damages, enhanced damages, exemplary damages, statutory damages, including for willful infringement, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 17 U.S.C. §504, 15 U.S.C. § 1117 and Tex. Bus. & Com. Code § 16.104; and

8. Such other and further relief as this Court deems just and proper.

Dated: November 3, 2023                                    Respectfully submitted,

                                                          */s/ J. David Cabello*
                                                          J. David Cabello
                                                          *Attorney-in-charge*
                                                          State Bar No. 03574500
                                                          Munira A. Jesani
                                                          State Bar No. 24101967
                                                          **Cabello Hall Zinda PLLC**
                                                          801 Travis, Ste. 1610
                                                          Houston, Texas 77002
                                                          Tel.:  (832) 631-9990
                                                          Fax:  (832) 631-9991
                                                          david@CHZFirm.com
                                                          MJesani@CHZFirm.com

**Attorneys for Plaintiff Good Sportsman Marketing LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 3, 2023, counsel for GSM initiated service of the foregoing document via the Court's ECF system.

*/s/ John Watkins*
John Watkins
Paralegal