**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GOOD SPORTSMAN** | § | |
| **MARKETING, LLC** | § | |
| *Plaintiff*, | § | **CASE NO. 4:23-cv-2371** |
| | § | |
| **vs.** | § | |
| | § | |
| **SHENG CHEN, HAIYING CHENG,** | § | |
| **AND CHEN ZUBANG** | § | |
| | § | |
| | § | **JURY DEMANDED** |
| *Defendants*. | § | |

**PLAINTIFF GOOD SPORTSMAN MARKETING LLC'S**
**MOTION FOR DEFAULT JUDGMENT AND PERMENANT INJUNCTION**

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

    A.  GSM's Intellectual Property ............................................................................ 2

    B.  Defendants' Unlawful Activities ...................................................................... 4

    C.  Defendants' Discovery Sandbagging................................................................ 5

    D.  Defendants' Non-Compliance With the Discovery Orders ............................. 10

DEFAULT JUDGMENT IS PROPER .......................................................................... 12

    A.  Legal Standard for Default Judgment ............................................................ 12

    B.  Defendants' Conduct is Clearly Willful or in Bad Faith. ............................... 13

    C.  A Lesser Sanction Would Not Substantially Achieve the Desired Deterrent Effect. ........ 16

    D.  The Violations Are Attributable to the Client................................................. 19

    E.  GSM Has Been Substantially Prejudiced by Defendants' Discovery Non-Compliance and

        Cannot Prepare for Trial. .......................................................................... 19

REQUEST FOR PERMENANT INJUNCTION............................................................ 21

    A.  Plaintiff Has Suffered Irreparable Harm........................................................ 22

    B.  Remedies at Law Are Inadequate ................................................................... 22

    C.  The Balance of Hardships Favors Plaintiff..................................................... 23

    D.  The Public Interest Would Not Be Disserved................................................. 23

REQUEST FOR ORAL HEARING.............................................................................. 24

CONCLUSION .................................................................................................................... 24

## Table of Authorities

**Cases**

*Batson v. Neal Spelce Assocs.*,
    765 F.2d 511 (5th Cir. 1985) ............................................................... 13

*Bell v. Texaco, Inc.*,
    493 F. App'x 587 (5th Cir. 2012) ................................................. 13, 14, 16, 20, 21

*Borges v. Gidi Bar-N-Grill Ltd. Liab., Civil Action No. 4:23-CV-00897*,
    2024 U.S. Dist. LEXIS 198139 (E.D. Tex. Oct. 31, 2024) ............................................. 16, 18

*Borges v. Gidi Bar-N-Grill Ltd. Liab., Civil Action No. 4:23-CV-00897*,
    2024 U.S. Dist. LEXIS 198139 (E.D. Tex. Oct. 31, 2024)(2) ................................. 13, 18, 20

*Calsep A/S v. Dabral*,
    84 F.4th 304 (5th Cir. 2023) ................................................. 14, 16, 17, 18, 20, 21

*Chevron Intellectual Prop., LLC*,
    2009 U.S. Dist. LEXIS 74751 ............................................................ 23, 24

*Chisesi v. Auto Club Family Ins. Co.*,
    374 F. App'x 475 (5th Cir. 2010) ............................................................ 13, 20, 21

*Flowserve Corp. v. Hallmark Pump Co.*,
    2011 U.S. Dist. LEXIS 42802, 2011 WL 1527951 (S.D. Tex. Apr. 20, 2011) ..................... 22

*Great Am. Ins. Co. v. All In Constr., LLC, No. SA-21-CV-00650-XR*,
    2022 U.S. Dist. LEXIS 110170 (W.D. Tex. June 21, 2022) ................................. 19

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) ............................................................ 13

*Moore v. CITGO Ref. & Chemicals Co., L.P.*,
    735 F.3d 309 (5th Cir. 2013) ............................................................ 13

*Perez v. Meridian Sec. Ins. Co., No. 7:21-cv-00487*,
    2022 U.S. Dist. LEXIS 245782 (S.D. Tex. Nov. 10, 2022) ................................. 16, 19, 20

*Products Liability Litigation*,
    966 F. 3d 351 (5th Cir. 2020) ............................................................ 17

*Smith v. Smith*,
    145 F.3d 335 (5th Cir. 1998) ............................................................ 12

*Tech. Chem. Co. v. IG-LO Prods. Corp.*,
    812 F.2d 222 (5th Cir. 1987) ............................................................ 13-14

*Techs., Ltd.*
    948 F. Supp. 2d ............................................................ 22, 24

*United States v. 49,000 Currency*,
    330 F.3d 371 (5th Cir. 2003) ................................................................ 14, 16, 18

*YETI Coolers, LLC v. Zhejiang Zhuosheng Indus. & Trade Co.*,
    2019 U.S. Dist. LEXIS 104500 ................................................................ 23, 24

**Other Authority**

15 U.S.C. §1116 .............................................................................. 21, 22, 25

15 U.S.C. §1117 .................................................................................... 25

15 U.S.C. §1118 .................................................................................... 25

15 U.S.C. §1125 .......................................................................... 1, 21, 24, 25

17 U.S.C. §410 ..................................................................................... 3

17 U.S.C. §501 ..................................................................................... 1

17 U.S.C. §504 .................................................................................... 25

40 C.F.R. §211.104 ................................................................................. 5

Fed. R. Civ. P. 37 ................................................................ 2, 10, 11, 12, 18, 26

Tex. Bus. & Com Code §16.104 ..................................................................... 1

Tex. Bus. & Com. Code § 16.104 ................................................................... 25

Tex. Bus. & Comm. Code §16.103 .......................................................... 5, 6, 24

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Good Sportsman Marketing LLC ("GSM") filed its Original Complaint on June 28, 2023 (Dkt. 1) against Defendant Sheng Chen and as yet unknown additional Defendants. On July 10, 2023, GSM filed its First Amended Complaint (Dkt. 10) naming Haiying Cheng and Chen Zubang as additional Defendants (collectively with Sheng Chen, "Defendants"). GSM's First Amended Complaint requested preliminary and permanent injunctive relief and damages for copyright infringement under the United States Copyright Act (17 U.S.C. §501 et seq.), violations of the Lanham Act (15 U.S.C. §1125(a)(1)(A)), violations of Tex. Bus. & Com Code §16.104, unjust enrichment, and unfair competition. Defendants, who reside in China, were ultimately served through their counsel after attempting to weaponize the Hague Convention. Dkts. 15, 16.

GSM filed a Second Amended Complaint (Dkt. 32) and then a Third Amended Complaint (Dkt. 49), both of which Defendants moved to dismiss (Dkts. 40, 59). Defendants' motion to dismiss the Third Amended Complaint was denied on January 10, 2025. Dkt. 87.

Separately, GSM was attempting to conduct discovery, which Defendants repeatedly failed to answer or to answer properly, even in the face of orders from this Court requiring them to do so. Because of the various discovery delays, laid out more fully below, this case has never progressed beyond the discovery stage, despite its having been filed almost two years ago, and despite the fact that the Docket Control Order entered by this Court on December 13, 2023 set trial in this case for February or March 2025. Dkt. 39 at p. 2. *I.e.*, **despite the fact that this case should have been tried and completed one to two months ago, it has never progressed beyond the beginning stages due to Defendants' continual sandbagging of GSM by failing to comply with discovery and this Court's orders.**

1

Accordingly, pursuant to this Court's February 6, 2025 Order (Dkt. 94) and Federal Rule of Civil Procedure 37(b)(2)(A)(vi), GSM requests the Court to enter a final default judgment against Defendants and enter a permanent injunction enjoining Defendants, and all those acting in concert with Defendants, from further trade dress infringement.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. GSM's Intellectual Property

As GSM lays out in more detail in its Third Amended Complaint, GSM is a leading provider of sporting goods to hunters in North America. Dkt. 49. For many years, GSM has continuously engaged in the development, manufacture, and sale of hearing protective ear muffs for hunters and shooters. GSM created unique, distinctive, and non-functional designs to use with electronic ear muffs under the Walker® Razor® brand. The design of the Walker® Razor® brand of electronic ear muffs that is the subject of this case was created in 2015 and introduced into the marketplace in early 2016. GSM has extensively and continuously promoted and used these designs for the subsequent eight years in the United States and in Texas. Through extensive and continuous promotion and use, GSM's Walker® Razor® designs have become well-known indicators of the origin and quality of GSM's hearing protective ear muffs.

GSM is the federally registered copyright owner of the design drawings of the Walker® Razor® electronic ear muffs. GSM's US Copyright Registration Nos. are Vau001419213 / 2020-10-28, Supplement to: Vau001377848 / 2019 for "Electronic Ear Muffs." The registration of the work was made within 5 years of the first publication of the work and the certificate of registration serves as prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. §410(c). Images of GSM's federally registered copyright design drawings are visible in GSM's Third Amended Complaint at paragraph 16.

2

Upon information and belief, Defendants have obtained their infringing ear muffs from factories that have access to GSM's copyrighted design drawings, and/or derivatives of these drawings which include the molds used to make the ear muffs.  These drawings and molds are being used to create Defendant's infringing ear muffs.

GSM is also the owner of federally registered United States Trademark Registration No. 3630504 for the trademark "Walker's," in connection with sound enhancement and personal safety for hunters and software, and United States Trademark Registration No. 5147672 for the trademark "Razor" in connection with hearing muffs for protecting hearing.

GSM's Walker® Razor® designs also have acquired substantial secondary meaning in the marketplace and have become famous.  GSM owns trade dress rights relating to its electronic ear muff designs.  The designs of the Walker® Razor® ear muffs have distinctive and non-functional features that identify to consumers that the origin of the Walker® Razor® ear muffs is GSM.  As a result of at least GSM's continuous and exclusive use of the Walker® Razor® electronic ear muffs, GSM's marketing, advertising, and sales of the Walker® Razor® electronic ear muffs, and the highly valuable goodwill and substantial secondary meaning acquired as a result, GSM owns trade dress rights in the designs and appearances of the Walker® Razor® electronic ear muffs, which consumers have come to uniquely associate with GSM.  GSM has invested substantial resources in building its trade dress.

From August 2022 to July 2023, GSM and Defendants engaged in a series of communications following GSM's August 2022 submission to AMAZON of a complaint of copyright infringement by sales of copyright infringing electronic ear muffs under the ACT FIRE mark.  When it became abundantly clear that Defendants had no interest in ceasing willful infringement activities, the suit was commenced.

### B. Defendants' Unlawful Activities

As explained in greater detail in its Third Amended Complaint, GSM brings this case against Sheng Chen, Haiying Cheng, and Chen Zubang for unlawfully infringing GSM's exclusive rights by copying GSM's design of the Walker's Razor ear muffs protected under GSM's copyrights and trade dress.  GSM alleges that Defendants have obtained their ear muffs from factories that have exactly copied GSM's Walker's Razor design drawing and used molds based off of these drawings, in at least four brands of electronic ear muffs sold on the AMAZON marketplace, ACT FIRE, HITAIM, FIREGEAR and GLORYFIRE.  It appears that since a demand letter dated May 26, 2023 regarding each of these brands, on June 26, 2023, the GLORYFIRE and FIREGEAR sites show the accused products as unavailable.  Infringing products continue to be sold under the ACT FIRE and HITAIM marks.

GSM further alleges that Defendants violated GSM's intellectual property rights by trading off of the goodwill of GSM's popular and unique design, selling, advertising, and offering for sale competitive products in interstate commerce that infringe GSM's copyrights and trade dress.  Upon information and belief, Defendants obtained these infringing ear muffs from a factory that has access to GSM's copyrighted design drawings and molds. Defendants are exploiting GSM's copyright and trade dress protected design for commercial purposes without GSM's consent, while also causing confusion in the marketplace through copying of the design so exactly that consumers have concluded that the Walker's® Razor® ear muffs and at least the ACT FIRE brand ear muffs are made in the same factory.  Defendants' unlawful conduct causing confusion in the marketplace constitutes an unlawful attempt to trade on GSM's goodwill and reputation for quality products, thereby causing dilution of GSM's marks and reputation.

As a result of Defendants' unlawful conduct, GSM has lost and continues to lose sales. Due to the direct copying of GSM's products, the purchasing public believes GSM's and

Defendants' products to be made in the same factory.  This action causes a false impression that Defendants' products have a connection to GSM thus causing irreparable damage to GSM's reputation.  Further, the Noise Reduction Labelling of Defendants' products is in violation of 40 C.F.R. §211.104, in several important aspects including by failure to identify the product manufacturer, address or the model.  It is unknown whether the products actually meet the stated noise reduction levels.

In its Third Amended Complaint and Request for Preliminary Injunction and Permanent Injunction, Plaintiff alleges: (i) infringement of Plaintiff's federally registered design of the Ear Muffs; (ii) infringement of GSM's trade dress under the Lanham Act; (iii) trade dress dilution under Tex. Bus. & Comm. Code §16.103; and (iv) common law trade dress infringement, unfair competition, misappropriation, and unjust enrichment.  Dkt. 49.

### C. Defendants' Discovery Sandbagging

GSM served its first set of interrogatories and requests for production on February 29, 2024.  *See* Declaration of J. David Cabello ("Cabello Decl.")[1] at ¶ 4.  On May 24, 2024, two months after responses were originally due, GSM brought to the Court's attention that it had not yet received any responses to its first set of interrogatories and that "the essential part of the document discovery" was "still missing."  *See* Exhibit G at pp. 3-4.  Defendants' counsel represented that his client was having health issues and that he would be able to resolve the situation shortly.  *Id*. at p. 4.  The Court required Defendants to respond to the interrogatories and produce documents by June 7, 2024.  *Id*. at p. 7.  The Court also set a status conference every two weeks in order to ensure that this case continued to move forward.  *Id.* at p. 5. Defendants' counsel also promised to follow up with his clients about a second set of discovery requests to which

---

[1] All exhibits referred to herein are exhibits to the Declaration.

answers would soon be due to "make sure" Defendants would be "on schedule for providing those responses in a timely manner at the due date…." *Id*. at p. 8.  Defendants' counsel added, "I think having a two-week meeting will help provide emphasis to the Defendants to comply." *Id*.

At the June 10, 2024 status conference, GSM informed the Court that though it had received responses to its first set of interrogatories, those responses contained untimely objections and were "deficient and incomplete."  Dkt. 68 at p. 4.  GSM therefore asked the Court's permission to file a motion to compel and for sanctions.  *Id*. at p.5.  GSM noted that Defendants' conduct had "delayed the administration in this case, so much so that [GSM was] going to have to ask the Court to either suspend the current scheduling order until the Court rule[d] on the motion to compel and the motion for sanctions or permit [GSM] to file a revised scheduling order." *Id*. at p. 6.

The Court ultimately concluded:

> Mr. Cabello [GSM's counsel] is right.  Basically, this discovery had been due a long time ago.  There were multiple extensions.  It hadn't been provided.  It's been pending for quite a while, so here's what we're going to do.
> Mr. Keener [Defendants' counsel], by Wednesday, I need you to produce all documents and information responsive to the discovery request, one….
> If that's not done by Wednesday, then literally all the objections are going to be waived. Everything. This is -- this is the red line. The red line really was -- I mean, the 6th and the 7th is when you talked about basically having all this information down, but it's not clear that Mr. Cabello has gotten the information that he needs, so produce everything that you're going to produce by Wednesday. Make sure that everything is produced….
> [T]his should've been done a long, long, long time ago. And the Court accepted, Mr. Keener, that because your clients are abroad, because, you know, there might be some difficulties getting in touch with them, the Court was willing to give you some leeway to try to get that information together. But you can't use that leeway in order to sandbag somebody.

*Id*. at pp. 17-19.

Despite these clear orders from the Court, Defendants did not properly comply, and on June 24, 2024, GSM moved to compel discovery and for sanctions because Defendants' answers to discovery requests were "evasive or incomplete."  Dkt. 67 (the "First Motion to Compel").

eason

Defendants' response was due on July 15, 2024; but on July 18, 2024, GSM was forced to file a letter requesting an in-person status conference because Defendants had not filed a response to the First Motion to Compel or requested more time to file one. Dkt. 70. GSM noted the need to amend the current Docket Control Order to extend deadlines under the circumstances. *Id.*

On July 31, 2024, instead of responding to the First Motion to Compel, Defendants' counsel filed an opposed motion to withdraw as counsel of record (the "Motion to Withdraw"), representing, inter alia, that counsel had "ceased to receive information and instructions regarding the instant litigation from Defendants" and that "Defendants [had] ceased following instructions provided by counsel regarding the instant litigation." Dkt. 71 at p. 1.

> GSM opposed the motion, arguing in part:
>
> > Pursuant to this Court's Docket Control Order (Dkt. 39), expert reports could not be timely prepared because of Defendants failure to cooperate in the discovery process,[2] discovery is due to be completed by August 23, 2024, and dispositive motions must be filed by September 27, 2024. All other pre-trial motions are currently due by November 15, 2024, and trial is to take place in early 2025. Defendants also currently have a motion to dismiss GSM's Third Amended Complaint pending (Dkt. 64), and depositions of Defendants are scheduled for August 20-22, right before the discovery deadline.
> > Thus, to the extent that Defendants would seek new counsel or to represent themselves *pro se,* it is likely that the scheduling order would need to be amended and all deadlines pushed out....

Dkt. 72.

While the Motion to Withdraw was still pending, GSM filed another pre-motion conference request letter on August 9, 2024, seeking leave to file a second motion to compel because of "*another*...issue caused by Defendants' failure to cooperate in discovery." Dkt. 73 (emphasis in original). Defendants had been required to answer additional sets of discovery served by GSM on or before August 8, 2024, but Defendants had neither responded nor objected, nor requested an

---

[2] Because of Defendants' obstreperous discovery conduct, this Court suspended the expert report deadline. Exhibit A at p. 20, lines 21-23. [Footnote part of quotation.]

extension of time.  *Id*.  GSM noted it had raised the late response with Defendants' counsel prior to filing the letter and was told that counsel could not respond because he "ha[d] not received communications from his clients."  *Id*. at p. 2.  GSM further noted that it was "unable to obtain the evidence it needs to continue litigating this case…."  *Id*.

On August 30, 2024, the Court heard the Motion to Withdraw.  Dkt. 76.  At that time, GSM indicated to the Court that it had served notices of deposition for the three Defendants for August 20, 21, and 22, and Defendants had failed to appear or inform GSM that they were not going to appear, and Defendants' counsel had been unresponsive to emails regarding the depositions.  *Id*. at p. 10.  The Court again asked Defendants' counsel to provide information regarding how he had attempted to comply with GSM's discovery requests.  *Id*. at pp. 17-19.  The Court declined to allow Defendants' counsel to withdraw at that time.  *Id*.

Not long thereafter, on September 2, 2024, GSM filed its second motion to compel in relation to the discovery that was the subject of its August 9 letter (the "Second Motion to Compel" and together with the First Motion to Compel, the "Motions to Compel").  Dkt. 77; *see also* Dkt. 73.  The Motions to Compel were heard by the Court together on September 23, 2024.  Dkt. 84. At that time, GSM informed the Court that 98% of the documents produced by Defendants up to that point were printouts from the internet rather than Defendants' internal documents.  *Id*. at p. 7. After discussion of this issue with Defendants' counsel, the Court said:

> But you've [i.e., Mr. Keener] just admitted to me that basically you did the production for your client. Your client hadn't produced these documents. You -- you know, you represented to me that like, 2,000 documents or 2,089 documents or whatever have been produced. But in reality, most of those documents are documents that you create -- I mean, you, I say created, you printed them up off the internet for your client and then submitted them under -- for your client. Your clients have produced basically little or nothing in this case. So, Mr. Cabello is right, you haven't really produced a whole lot.
>
> ….

8

> MR. KEENER: I admit that, Your Honor. And my attempts to get those documents and information have continued to be unsuccessful.

*Id*. at pp. 31-32.

The Court continued:

> The issue is that there's really nothing -- I mean, I can't believe -- and it just stretches the imagination to believe that your clients are doing all this business on Amazon.com and don't have any of the documents that are being requested in the request for production. And it[] strains credulity that they can't produce any of these records, or moreover, they can't even sign a verification indicating that the answers they've given are true and correct….I mean, this is not responsive to the discovery requests. It's not….

> MR. KEENER: I understand, Your Honor. I feel the frustration as well. As a reasonable person, there are likely other documents that the defense in this case had but are not going to give them to me. Every attempt that I've made to seek and get those documents, I have not received a single one. I've produced everything that I've received….I am doing the best that I can with what I have, but I feel like I have both arms tied behind my back….

*Id*. at pp. 33-35.  Defendants' counsel further represented that he had "asked on numerous occasions" for dates from Defendants for their depositions, adding: "Once I saw that I wasn't getting a date for depositions, that I'm not getting additional information or documents from my clients, that caused me to lead to the effective I can no longer further represent these clients adequately, and they won't assist me in defending them in this case. So, I filed my motion to withdraw…." *Id.* at p. 37.

On February 6, 2025, this Court granted GSM's Motions to Compel.  Dkts. 92 and 93 (together, the "Discovery Orders").

In its order on the First Motion to Compel, the Court ordered Defendants to amend and/or supplement their interrogatory responses, properly verify their interrogatory responses, and amend and/or supplement their document responses and written responses to requests for production for Plaintiff's first and second sets of discovery.  Dkt. 92.  The Court also ordered that Defendants had

9

waived all objections other than privilege objections, and the Court imposed monetary sanctions on Defendants and Defendants' counsel. *Id.* Defendants were ordered to comply with the terms of the order by March 10, 2025. *Id.*

In its order on GSM's Second Motion to Compel, this Court ordered that on or before March 10, 2025, Defendants were required to serve complete, written responses to GSM's third set of discovery and produce responsive documents. Dkt. 93. Defendants were prohibited from asserting any objections, including objections based on privilege, and the Court imposed monetary sanctions on Defendants and Defendants' counsel. *Id.*

The Court further ordered that if Defendants failed to comply with its Discovery Orders before March 10, 2025, the Court would "**enter a default judgment against Defendants** pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi)." Dkt. 94 (emphasis in original).

On the same day, the Court also denied Defendants' counsel's Motion to Withdraw. Dkt. 95. The Court held:

> Over the course of several discovery hearings, two things have become clear: (1) Defendants have repeatedly failed to comply with the Court's discovery orders; and (2) defense counsel, in what the Court will charitably term a misguided attempt to mitigate their clients' inability or outright refusal to participate in discovery, have fabricated discovery responses by printing materials from third-party websites and passing those materials off as documents produced by their clients. (Dkt. 68; Dkt. 82; Dkt. 84). Given Defendants' stalling of discovery in this case and defense counsel's evident complicity therein, the Court concludes that allowing defense counsel to withdraw at this point will unduly delay resolution of the lawsuit, impede the administration of justice, and cause prejudice to Plaintiff—particularly as there is no countervailing indication that allowing defense counsel to withdraw will facilitate efficient litigation of this case.

*Id.* at pp. 2-3.

### D. Defendants' Non-Compliance With the Discovery Orders

On March 10, 2025, Defendants provided GSM with discovery responses and another document production that largely failed to comply with this Court's Discovery Orders. For this

Court's ease of reference, GSM has provided two charts, attached as Exhibit A to the Declaration of J. David Cabello, laying out what was required by each of the Court's orders, the related discovery sought, whether Defendants complied, and how Defendants failed to comply where applicable.

*Among other things, Defendants failed to produce anything in response to GSM's Third Set of Requests for Production, provided no documents or responses with respect to any of Defendants' brands other than ACT FIRE, and often provided only partial detail or non-responsive answers to interrogatories.* *See generally* Exhibit A.

Defendants did not timely provide proper verifications of their discovery responses, requiring GSM to follow up with Defendants' counsel to obtain them. Cabello Decl. at ¶ 6. Defendants also did not produce the documents that this Court specifically ordered them to reproduce in more usable/legible form. Exhibit A at pp. 10-11.

Further, in general, the discovery responses Defendants provided to interrogatories are best described as "word vomit": The answers are long, rambling, and interspersed with Chinese and then with apparent translations (with the following occasional interjection: "[ANSWER IN CHINESE] / [VERIFIED TRANSLATION]").[3] They sometimes say, "See attached Interrogatory No. [X] documents," but with no documents attached to the interrogatories or apparently part of Defendants' March 10, 2025 document production.[4] Likewise, they sometimes say things like, "For the specific information, please refer to the attachment," but there is no attachment.[5]

Defendants' request for production responses are no better. Defendants' provided written response to GSM's Third Requests for Production was essentially a draft document with holes in

---

[3] *See e.g.* Exhibit B at p. 48.
[4] *See e.g.* Exhibit B at p. 56. (Defendants' responses to GSM's Third Set of Interrogatories, conversely, *do* clearly include produced documents as being responsive to interrogatories.)
[5] *See e.g. id*.

it for Defendants' responses.  *See* Exhibit F; Exhibit A at pp. 15-16.  Defendants' supplemental responses to Plaintiff's First and Second Requests for Production also frequently treat the requests for production as interrogatories, contain at least one answer solely in Chinese, and contain at least one answer that simply says, "Defendants respond as follows" (i.e., with no further response).[6]

## DEFAULT JUDGMENT IS PROPER

### A.    Legal Standard for Default Judgment

Federal Rule of Civil Procedure 37(b)(2) authorizes the district court to strike pleadings or render a default judgment against a party as a sanction for failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). When a district court awards default judgment as a discovery sanction, two criteria must be met. *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998). First, the penalized party's discovery violation must be willful. *Id.* Second, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.* The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation. *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985).[7]

Further, "[a] district court has 'broad discretion in all discovery matters,' and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)

---

[6] *See* Exhibit D generally for treatment as interrogatories; *see* Exhibit D at pp. 8 and 11 for incomplete and Chinese responses.  Highlights in this document, as in all other discovery responses from Defendants, were in the document as it was provided to GSM by Defendants and were not added by GSM.  Cabello Decl. at ¶ 5.

[7] Other courts have considered the elements regarding prejudice and the client's blame to be required.  *See e.g. Borges v. Gidi Bar-N-Grill Ltd. Liab.*, Civil Action No. 4:23-CV-00897, 2024 U.S. Dist. LEXIS 198139, at *5 (E.D. Tex. Oct. 31, 2024) ("To impose such sanctions, the Court must find that: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation substantially prejudiced the opposing party; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'").  Regardless, GSM will demonstrate that all elements are met here.

(quoting *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)).  This broad discretion extends to the imposition of discovery sanctions. *See Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

**B.  Defendants' Conduct is Clearly Willful or in Bad Faith.**

"Willfulness may be demonstrated by a party's 'failure to comply with the court's discovery order….'" *Bell v. Texaco, Inc.*, 493 F. App'x 587, 593 (5th Cir. 2012) (quoting *Chisesi v. Auto Club Family Ins. Co.*, 374 F. App'x 475, 477 (5th Cir. 2010); *see also Calsep, Inc. v. Intelligent Petroleum Software Solutions, LLC*, No. 4:19-CV-1118, 2020 U.S. Dist. LEXIS 231410, 2020 WL 7249831, at *3 (S.D. Tex. Nov. 18, 2020) (when a party chooses not to comply with court orders, then the party acts willfully in its violation). Notably, the "district court is permitted to 'rely on its complete understanding of the parties' motivations.'" *Bell*, 493 F. App'x at 593 (citing *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998)).

Knowingly ignoring an obligation, especially multiple times, may alone be enough to find bad faith. *See Tech. Chem. Co. v. IG-LO Prods. Corp.*, 812 F.2d 222, 224-25 (5th Cir. 1987) (finding no abuse of discretion in default-judgment sanction for "repeated failures" that "culminate[d] in a party's failure to comply with a court [discovery] order").  And noncompliance is doubly problematic when the lower court issues a warning. *See Bell*, 493 F. App'x at 593 (holding that "Plaintiffs' repeated failure to comply with discovery orders, even after being warned of the possibility of sanctions and personally instructed on how to comply, constituted willful noncompliance" justifying litigation-ending sanctions).  Much like delays, a pattern of misconduct is evidence of willfulness.  *See id.* ("Plaintiffs regularly ignored court orders, even those ordering [basic disclosures].").  Thus, consistently ignoring or flouting a court's orders has been deemed to constitute willful conduct meriting default.  *See e.g. Calsep A/S v. Dabral*, 84 F.4th 304, 312 (5th Cir. 2023) (along with delays, Defendant consistently ignored or violated court orders).  Likewise,

13

incomplete and evasive discovery responses in violation of court orders constitutes bad faith. *United States v. 49,000 Currency*, 330 F.3d 371, 379 (5th Cir. 2003) (dilatory actions demonstrated by lengthy delays and obstructive behavior as exemplified by evasive and incomplete responses constituted bad faith).

Here, Defendants have a clear record of delay, failure to comply with this Court's orders, and incomplete and evasive discovery responses. Just short of a year ago, on May 24, 2024, GSM first informed the Court that it had not received responses to its first set of interrogatories and that most document discovery was still missing. *See* Exhibit G at pp. 3-4. That discovery was originally served on February 29, 2024. *See* Cabello Decl. at ¶ 4. The Court required Defendants to respond to that first set of discovery requests by June 7, 2024. *See* Exhibit G at p. 7. When on June 10, 2024, Defendants still had not properly complied with that first set of discovery, the Court again told Defendants to comply within two days, saying, "This is -- this is the red line. The red line really was -- I mean, the 6th and the 7th is when you talked about basically having all this information down….[T]his should've been done a long, long, long time ago." Dkt. 68 at pp. 17-19. But Defendants still did not comply, necessitating GSM's First Motion to Compel, filed on June 24, 2024. Dkt. 67. Now, eleven months later—after multiple admonitions from the Court and the First Motion to Compel; in defiance of this Court's Discovery Orders which relate in part to that first set of discovery; and despite having been sanctioned—Defendants have still not properly responded to GSM's first interrogatories and first requests for production, as set forth in Exhibit A.

GSM has also had to file its Second Motion to Compel relating to Defendants' failure to respond to its additional discovery, originally due August 8, 2024, and to which Defendants made no initial response at all. Dkt. 73 (emphasis in original); Dkt. 77. That discovery, too, has been

incomplete for the better part of a year, and Defendants have failed to properly respond to it even after this Court's Discovery Orders. *See* Exhibit A. Defendants also failed to appear for their depositions, originally scheduled for late August 2024, and were unresponsive to attempts to communicate with them about those depositions. Dkt. 76 at p. 10. Those depositions have never taken place to date nor have they been scheduled. Cabello Decl. at ¶ 7.

Further, at the time both Motions to Compel were heard by this Court on September 23, 2024, 98% of the documents produced by Defendants were essentially an attempt to pad the production by Defendants' counsel with documents from the internet, rather than documents actually responsive to GSM's requests. Dkt. 84 at pp. 7, 31-32 ("But you've [i.e., Mr. Keener] just admitted to me [i.e., the Court] that basically you did the production for your client….Your clients have produced basically little or nothing in this case."). Although Defendants have produced some documents in response to this Court's Discovery Orders, their production is still substantially lacking. *See* Exhibit A. In particular, no documents have been produced in response to GSM's third set of requests for production, as required by this Court's second discovery order (Dkt. 93). *See* Exhibit A.

Such delay and failure to comply is more than sufficient for a finding of willfulness and bad faith. *See Bell*, 493 F. App'x at 593; *Calsep A/S*, 84 F.4th at 312; *49,000 Currency*, 330 F.3d at 379; *see also Perez v. Meridian Sec. Ins. Co.,* No. 7:21-cv-00487, 2022 U.S. Dist. LEXIS 245782, at *3-4 (S.D. Tex. Nov. 10, 2022) (numerous opportunities to respond to or supplement discovery over a "protracted timeline show a blatant disregard for the Court's deadlines and discovery management," meriting finding of willfulness); *Borges v. Gidi Bar-N-Grill Ltd. Liab.*, Civil Action No. 4:23-CV-00897, 2024 U.S. Dist. LEXIS 198139, at *5-6 (E.D. Tex. Oct. 31,

2024) (failure to comply with court's discovery order even after personally instructed to do so evidence of bad faith). The first factor is therefore satisfied.

### C.  A Lesser Sanction Would Not Substantially Achieve the Desired Deterrent Effect.

"[F]ail[ing] in several…material respects to comply" with a court's discovery order is grounds for default. *United States v. 49,000 Currency*, 330 F.3d 371, 377 (5th Cir. 2003). The district court is not "required to attempt to coax" a defendant "into compliance with its order by imposing incrementally increasing sanctions," as the "order itself" may be "the method by which the district court [chooses] to compel discovery compliance." *Id*. at 379 (finding that, "[i]n failing to comply with the district court's order, Claimants-Appellants rendered themselves vulnerable to sanctions to be administered in the district court's discretion….[T]he district court was well within its discretion in awarding default judgment as a sanction….).

Indeed, "[c]ourts have not required deep consideration of alternatives when it's plain that a lesser sanction wouldn't have done the trick….That's especially true where…the court warned [the defendant] to comply with its orders or face penalties. Warnings have weight—they may even allow a court to jump straight to litigation-ending sanctions." *Calsep A/S v. Dabral*, 84 F.4th 304, 316 (5th Cir. 2023) (citing *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 455-56 (5th Cir. 2022) ("[T]he failure of express warnings could allow the court to find that a lesser sanction would not substantially achieve the desired deterrent effect." (citation and quotation marks omitted)); *Bell*, 493 F. App'x at 593 ("At that time, the court again warned Plaintiffs that their case would be dismissed as a punitive sanction if they continued to ignore court orders. This warning had no apparent effect on Plaintiffs' behavior in the litigation. We conclude that the district court did not abuse its discretion in determining that Plaintiffs' previous failure to adhere despite the imposition of less drastic sanction indicated that additional monetary sanctions would not have ensured compliance.")); *see also In re Taxotere (Docetaxel) Products Liability Litigation*, 966 F.

16

3d 351, 360 (5th Cir. 2020) ("Given this record, it is unclear what lesser sanctions could have been appropriate following the district court's warnings and second chances." (citation and quotation marks omitted)).

In short, "[a] default judgment is sometimes the only practicable solution." *Calsep A/S*, 84 F.4th at 317 (citing *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 935 (6th Cir. 2020) ("It is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction." (alteration adopted) (citation and quotation marks omitted))). Sometimes, "anything lesser" would not "'serve[] the bests interests of justice.'" *Id.* (quoting *In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018)).

Sanctions are particularly just, "and the entry of a default judgment is appropriate" where a defendant has failed to comply with previous discovery orders from the Court in a manner that has caused the plaintiff's case to grind to a halt. *Borges v. Gidi Bar-N-Grill Ltd. Liab.*, Civil Action No. 4:23-CV-00897, 2024 U.S. Dist. LEXIS 198139, at *4-5 (E.D. Tex. Oct. 31, 2024) (default appropriate where Defendant "failed to comply with the Court's previous order for months by not providing responses to Plaintiff's requests for discovery," making Plaintiff's case "incapable of proceeding"). Default is additionally appropriate where such inaction forces the Plaintiff "to exert resources and time to enforce the Court's order." *Id.* Entering a default judgment is also an appropriate discovery sanction where the Plaintiff seeks documents to develop its case for trial, and the Defendant's failure to participate in the discovery process has "impeded [the] Plaintiff's ability to gather information to substantiate its claims," leaving the "Plaintiff with no other avenue for relief." *Id*.

Here, this Court is not "required to…coax" Defendants into discovery compliance through further orders and sanctions, after a clear record of delay and failure to comply. *49,000 Currency*, 330 F.3d at 379.  This Court explicitly informed Defendants that if they failed to comply with the Discovery Orders, it would enter default judgment against them under Rule 37.  Dkt. 94. "Warnings have weight," and this Court may therefore move without hesitation to litigation-ending sanctions. *Calsep A/S*, 84 F.4th at 316.  There is no reason to believe that after a year of failure to comply with the Federal Rules of Civil Procedure, this Court's oral admonitions and orders, and the Discovery Orders—and after monetary sanctions have already been ordered—that Defendants will now be schooled into compliance.  Further, the best interests of justice will not be served by anything less, as GSM has not only been unable to prepare for trial, but has been unable to actually proceed to a trial that was originally scheduled to be conducted a month or two ago.  *Calsep A/S*, 84 F.4th at 317.  GSM's case has come to a grinding halt, making default judgment just and appropriate.  *Borges*, 2024 U.S. Dist. LEXIS 198139, at *4-5; *see also id.* at *7-8 ("All available information indicates that if the Court were to issue a lesser sanction, Fayomi would ignore it like the Court's previous order. Such an order is unwarranted since it would expend limited judicial resources and cost Plaintiff additional time and resources to conduct discovery when Fayomi has been provided ample opportunity to respond to Plaintiff's discovery requests."); *Perez*, 2022 U.S. Dist. LEXIS 245782, at *5 (lesser sanctions had proven ineffective after two motions to compel and imposition of monetary sanctions, inter alia); *Great Am. Ins. Co. v. All In Constr., LLC*, No. SA-21-CV-00650-XR, 2022 U.S. Dist. LEXIS 110170, at *4 (W.D. Tex. June 21, 2022) (lesser sanctions not appropriate where Defendants failed to respond to court's orders repeatedly and continuing to delay case would only serve to benefit Defendants).  The second factor is therefore clearly satisfied.

18

### D. The Violations Are Attributable to the Client

"As a general rule in civil cases, clients are bound by the action (or inaction) of their attorneys." *Perez*, 2022 U.S. Dist. LEXIS 245782, at *4 (finding "[c]omplete failure by counsel to comply with discovery requests and with the Court's orders" to be "properly binding on Defendant.").

Here, Defendants' counsel has actively tried to withdraw from this litigation on the grounds that their clients have been uncooperative, including because counsel had "ceased to receive information and instructions…from Defendants" and because "Defendants [had] ceased following instructions provided by counsel…." Dkt. 71 at p. 1. Mr. Keener has stated that Defendants were "not going to give" responsive documents to him, adding, "I feel like I have both arms tied behind my back…." Dkt. 84 at pp. 33-35. Moreover, it is clear from the discovery responses provided to GSM that Defendants' counsel has in fact sought from Defendants the information requested by GSM and ordered to be provided by this Court. *See e.g.* Exhibit F (including bracketed requests for information, evidently from counsel, to Defendants to provide information as ordered by the Court). This Court may therefore readily attribute Defendants' discovery non-compliance to the Defendants themselves rather than to their counsel. This factor is clearly satisfied.

### E. GSM Has Been Substantially Prejudiced by Defendants' Discovery Non-Compliance and Cannot Prepare for Trial.

"Generally, [courts] find prejudice when a party's case-in-chief is seriously and gravely impacted." *Calsep A/S*, 84 F.4th at 314 (citing *Bell*, 493 F. App'x at 593 ("[W]e consider whether the other party's preparation for trial was substantially prejudiced.") (citation and quotation marks omitted))). Further, "the mere inconvenience of dealing with…unusable productions and being forced to repeatedly file motions to compel may alone amount to prejudice." *Id.* at 315 (finding district court did not err in finding prejudice); *see also Bell*, 493 F. App'x at 594 ("[T]he district

court did not abuse its discretion in finding that Plaintiffs' noncompliance [with discovery orders] in this case caused significant delay and required the filing of multiple motions to compel. As such, it was not an abuse of discretion to conclude that [the Defendant] was substantially prejudiced by Plaintiffs' noncompliance."); *Chisesi*, 374 F. App'x at 477 (finding a party was prejudiced when "[i]t was denied discovery any for months, was prejudiced in its ability to prepare for trial, and was forced to spend time and money attempting to coerce discovery"); *Perez*, 2022 U.S. Dist. LEXIS 245782, at *4-5 ("There is a reason that the Federal Rules often lump undue delay and prejudice together. Plaintiff has an interest in timely adjudication of her claims, and brazen refusal to participate in the discovery process causes prejudice."); *Borges*, 2024 U.S. Dist. LEXIS 198139, at *6-7 (Plaintiff substantially prejudiced by Defendant's failure to comply with court's discovery order where Plaintniff was not "able to conduct any discovery or prepare for trial" and where Plaintiff was "was forced to spend time and money attempting to coerce discovery" from Defendant).

This case should have already been tried, judgment entered, and the entire matter concluded excepting any appeals. *See* Dkt. 39 at p. 2. Instead, it has been stuck for two years in the beginning stages, while the parties wrangle over discovery that Defendants again and again fail to respond to or produce. Additionally, GSM has been and remains wholly unable to prepare its case for any trial that might actually take place. Cabello Decl. at ¶ 9. GSM has been forced through the "inconvenience" of "unusable productions" (and hardly-readable discovery responses) and forced to file multiple motions to compel. *See* Exhibits A-F; Dks. 67 and 77; *Calsep A/S*, 84 F.4th at 315; *Bell*, 493 F. App'x at 594. GSM has been forced to expend considerable time and money "attempting to coerce discovery" from Defendants. *Chisesi*, 374 F. App'x at 477. Defendants

have also continued to be able to sell their infringing ear muffs during this time, to GSM's continuing prejudice.  This factor is therefore satisfied.

For all of the above reasons, this Court should enter default judgment.

## REQUEST FOR PERMENANT INJUNCTION

Plaintiff now seeks entry of a permanent injunction on its Count II for Lanham Act Violations in relation to Defendants' infringement of GSM's trade dress in its ear muffs.  GSM requests this Court permanently stop Defendants from infringing on GSM's trade dress and selling their infringing ear muffs. The Lanham Act authorizes the entry of a permeant injunction upon findings of a violation of section 1125(a)(1)(A), and GSM is entitled to a rebuttable presumption of irreparable harm.  15 U.S.C. § 1116(a).

To be entitled to a permanent injunction under the Lanham Act, a party must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Flowserve Corp. v. Hallmark Pump Co.*, 2011 U.S. Dist. LEXIS 42802, 2011 WL 1527951, at *9 (S.D. Tex. Apr. 20, 2011) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)); *see also Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 714 (S.D. Tex. 2013).  Moreover, "a permanent injunction may be issued as part of a default judgment." *YETI Coolers, LLC v. Zhejiang Zhuosheng Indus. & Trade Co.*, No. 1:17-CV-821-RP, 2019 U.S. Dist. LEXIS 104500, at *8-9 (W.D. Tex. June 21, 2019).

### A.  Plaintiff Has Suffered Irreparable Harm

Plaintiff is entitled to a rebuttable presumption of irreparable harm, upon a finding of a violation for trade dress infringement. 15 U.S.C. § 1116(a).  Nevertheless, Defendants' infringing use of ear muffs with Plaintiff's trade dress has caused and will continue to cause irreparable harm to Plaintiff's goodwill, brand, and reputation.  Because actual confusion exists due to Defendant's willful deception and infringement, consumers are unable to determine whether products purchased are authentic GSM products or Defendant's counterfeit products.  Cabello Decl. at ¶ 10.

Indeed, "[w]here the infringement involves direct competitors, a finding of irreparable harm may well be appropriate." *Clearline Techs., Ltd.*, 948 F. Supp. 2d at 715.  Here, Defendants are engaging in direct competition with GSM selling its infringing ear muffs with GSM's trade dress. This is sufficient to demonstrate irreparable harm.

### B.  Remedies at Law Are Inadequate

"Continuing infringement…is surely sufficient to show inadequacy of remedies at law." *Clearline Techs., Ltd.*, 948 F. Supp. 2d at 715 (citing 1 McCarthy on Trademarks and Unfair Competition § 30:2 ("If an injunction were denied, the court would be telling plaintiff to sit by and watch defendant continue to violate the law and infringe upon plaintiff's rights until such time as plaintiff decided to sue again for money damages as compensation for the past injury incurred.")); *see also Chevron Intellectual Prop., LLC v. Allen*, No. 7:08-CV-98-O, 2009 U.S. Dist. LEXIS 74751, at *8-9 (N.D. Tex. Aug. 24, 2009) ("Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant."); *YETI Coolers, LLC*, 2019 U.S. Dist. LEXIS 104500, at *8-9 ("YETI 'has no other adequate remedy at law because monetary damages will not prevent future infringing activity by [Zhuosheng].'").

Permanent injunctive relief is crucial for Plaintiff, because monetary relief is an inadequate remedy for the tremendous harm to Plaintiff's brand and reputation caused by Defendants' unlawful actions. The likelihood of confusion, and actual confusion present, is damaging Plaintiff's goodwill and business reputation. Accordingly, absent a permeant injunction, Defendants' continued infringing use of Plaintiff's trade dress will cause irreparable harm where there is no adequate legal remedy.

### C. The Balance of Hardships Favors Plaintiff

Defendants will not be harmed by being required to comply with the law, while Plaintiff will continue to be harmed if Defendants are not permanently enjoined from using Plaintiff's trade dress. *See Chevron Intellectual Prop., LLC*, 2009 U.S. Dist. LEXIS 74751, at *8-9 ("Requiring Defendant to restrain from future infringement will cause him minimal to no harm, and any potential harm caused by requiring him to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted."); *YETI Coolers, LLC*, 2019 U.S. Dist. LEXIS 104500, at *8-9 ("As for the third prong, requiring Zhuosheng to comply with the law imposes an insignificant harm outweighed by the harm to YETI's business in the absence of injunctive relief."). This element unquestionably favors granting Plaintiff a permanent injunction.

### D. The Public Interest Would Not Be Disserved

"[E]njoining continued trade dress infringement is in the public interest." *Clearline Techs., Ltd.*, 948 F. Supp. 2d at 716-17. "[T]he 'public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act….'" *Id.* at 715; *see also Chevron Intellectual Prop., LLC*, 2009 U.S. Dist. LEXIS 74751, at *8-9 ("Finally, an injunction would serve the public interest by promoting compliance with intellectual property law."); *YETI Coolers, LLC*, N2019 U.S. Dist. LEXIS 104500, at *8-9 ("[T]he fourth prong is satisfied because it is in the

public interest to promote adherence to the intellectual property laws."). Enjoining Defendants from continuing to infringe Plaintiff's trade dress is in the public interest here.

## REQUEST FOR ORAL HEARING

Plaintiff hereby requests an oral hearing in person on its Motion for Default Judgment and Permanent Injunction, at a date and time convenient to the Court, to allow Plaintiff the opportunity to appear and put forth testimony from its corporate representative(s) and any additional evidence to support its motion for default judgment, including its request for entry of a permanent injunction.

## CONCLUSION

For the reasons set forth in Plaintiff's Motion for Default Judgment and Permanent Injunction, Plaintiff respectfully requests that the Court:

A. Enter a default judgment against Defendants finding that they have (i) infringed GSM's trade dress in violation of § 1125(a) of Title 15 of the United States Code; (ii) violated GSM's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (iii) violated GSM's common law rights in GSM's trade dress; (iv) engaged in common law unfair competition; (v) engaged in common law misappropriation; and (vi) been unjustly enriched at GSM's expense, and that all of these wrongful activities by Defendants were willful;

B. Permanently enjoin Defendants, their officers, affiliates, employees, agents, and all others acting in concert with Defendants, from further infringement and dilution of GSM's trade dress, and further acts of unfair competition, misappropriation, and unjust enrichment by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of GSM's trade dress, pursuant to at least 15 U.S.C. § 1116;

C. Direct Defendants to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

D. Direct the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of GSM's trade dress in Defendants' possession or control, (iii) all plates, molds, and other means of making the infringing products in Defendants' possession, custody, or control, and (iv) all advertising materials related to the infringing products in Defendants'

possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

E.  Direct Defendants to publish a public notice providing proper attribution of GSM's trade dress to GSM, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

F.  Bar importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

G.  Find willful infringement;

H.  Award Defendants' profits, GSM's actual damages, enhanced damages, exemplary damages, statutory damages, including for willful infringement, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 17 U.S.C. §504, 15 U.S.C. § 1117 and Tex. Bus. & Com. Code § 16.104;

I.  Plaintiff must serve a copy of this Order on Defendants; and

J.  All other relief the Court deems appropriate at law and equity.

Dated:  April 22, 2025                    Respectfully submitted,

                                          /s/ J. David Cabello
                                          **J. David Cabello**
                                          Attorney-in-charge
                                          Texas Bar No. 03574500
                                          S.D. Texas I.D. No. 3514
                                          Email: david@chzfirm.com
                                          **Munira Jesani**
                                          Texas Bar No. 24101967
                                          S.D. Texas I.D. No. 3019538
                                          Email: mjesani@chzfirm.com
                                          **Stephanie E. Holden**
                                          Texas Bar No. 24107811
                                          S.D. Texas I.D. No. 3313983
                                          Email:  sholden@chzfirm.com
                                          **Frank Lin**
                                          Texas Bar No. 24055851
                                          S.D. Texas I.D. No. 711987
                                          **CABELLO HALL ZINDA, PLLC**
                                          801 Travis Street, Suite 1610

Houston, TX 77002
Tel.: 832.631.9990
Fax: 832.631.9991

***ATTORNEYS FOR PLAINTIFF
GOOD SPORTSMAN MARKETING,
LLC***

## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 37(a)(1) and the Court's local rules, the undersigned certifies that Plaintiff's counsel conferred with Defendants' counsel, Mr. Kevin Keener, regarding the subject of this motion on April 22, 2025.  Defendants are opposed to the motion.

*/s/ J. David Cabello*
J. David Cabello

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via ECF on April 22, 2025.

*/s/ John Watkins*
John Watkins
Paralegal